CITIZENS' BANK OF ST. LOUIS, Appellant, v. TIGER TAIL MILL AND LAND COMPANY.

| 152 | 145 |
| 99a | 620 |

### Division Two, November 14, 1899.

1. **Trover:** POSSESSION OR RIGHT TO POSSESSION. The action of trover must be bottomed on the right of property in the plaintiff, who must have the right of possession as well as the right of property at the time.

2. ——: ——: PLEADING. While the use of formal and technical averments, which were necessary at common law to the statement of a cause of action, have been dispensed with by the Missouri code, yet the same material allegations are necessary as at common law; and at common law it was necessary in order to state a cause of action in trover that the petition should state that the plaintiff had the possession or the right to the possession of the property sued for at the time of the conversion.

3. ——: ——: ——: CASE STATED. In this case the petition averred "that plaintiff on the 25th day of August, 1893, became, and ever since has been and now is the owner" of certain lumber, and that afterwards "said property came into the possession of the defendant, who unlawfully converted the same to his own use, and disposed of the same, to plaintiff's damage in the sum of $5,000." *Held*, that there is no averment of possession, or the right to possession in plaintiff, either expressed or implied, and that therefore the petition fails to state a cause of action.

4. ——: ——: SYMBOLICAL DELIVERY. There can be no symbolical delivery of property yet remaining in the actual possession of the defendant so long as the purchase price for the property has not been paid, nor so long as the lien of the vendor has not been waived. Nor is there symbolical delivery if it was agreed between the parties that the property should remain in the possession of the vendor for the payment of notes which had been executed by the purchaser for other lumber. And where the evidence as to these matters is conflicting, its weight is for the consideration of the trial court sitting as a jury, and if there is substantial evidence to support its findings the Supreme Court will not interfere therewith.

5. ——: ——: BILL OF SALE AS SECURITY. Where a bank accepts a bill of sale of certain lumber from a debtor as collateral security of his indebtedness, the bank occupies the same relation toward the company who had contracted to sell the lumber to the debtor that the debtor did.

*Appeal from St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

AFFIRMED.

VALLE REYBURN for appellant.

(1) Plaintiff's petition is sufficient. The material averments in an action of trover are ownership or possession of the property in the plaintiff and its wrongful taking and conversion by defendant. 26 Am. and Eng. Ency. of Law, 744-757 and 801; Kniffer v. Blumenthal, 107 Mo. 665. (2) The lien of defendant as vendor, upon the lumber in controversy otherwise conferred by legal implication was expressly waived by the provisions of the contract of sale, by the continuance and extension of credit to the Southern Company by the delivery of the order to Gaertner for the lumber undelivered, and could not be revived against this plaintiff; and defendant is estopped by its own actions and course of conduct from asserting as against this plaintiff any such lien, right or claim. Story on Sales (4 Ed.), sec. 287; 1 Jones on Liens, secs. 842-848; Tiedeman on Sales, sec. 120; Bigelow on Estoppel (5 Ed.), pp. 561, 570, 571, 579, 580 and 585.

STEWART, CUNNINGHAM & ELIOT for respondent.

(1) Plaintiff could not recover because this is a suit in trover for conversion, and plaintiff has not shown by the proofs that it was ever entitled to possession of the property. Bank v. Fisher, 55 Mo. App. 51; Deland v. Vandstone, 26 Mo. App. 297; Johnson & Co. v. Bank, 116 Mo. 558; 26 Am. and Eng. Ency. of Law, 744 and note 5; Doering v. Kenamore, 86 Mo. 558. Confessedly $1.30 per thousand feet must have been paid in notes or money before delivery could be claimed. No payment or tender of payment or notes was proved. Henderson v. Cass Co., 107 Mo. 50; Chase v.

Welsh, 45 Mich. 345; Liebbrandt v. Myron Lodge, 51 Ill. 81; Jones v. Mullinix, 25 Ia. 198; Bacon v. Smith, 2 La. Ann. 441; Harmon v. Magee, 57 Miss. 410; Sheredine v. Gaul, 2 Dallas (Pa.) 190; Hunter v. Warner, 1 Wis. 141.    (2)   On July 12, 1893, and before bill of sale to plaintiff there  was a partial rescission of the contract, and an agreement between defendant and the Southern Company that the undelivered lumber for which notes had been given at the rate of $7 per thousand feet, should remain in defendant's hands till the notes held by defendant should be paid.   This agreement of itself, and without reference to other circumstances, gave the defendant a lien upon this remnant for amount of the notes. (3)   The plaintiff could acquire by the bill of sale no greater or better right to the lumber than the Southern Company had, and so this case is to be treated as if it were a suit by the Southern Company for conversion of this lumber.   Southwestern freight Co. v. Plant, 45 Mo. 517; 37 Mo. App. 352; Conrad v. Fisher, 37 Mo. App. 389.   Especially so since the plaintiff paid no value and had notice of the Southern Company's insolvency.   Doering v. Kenamore, 86 Mo. 588; Conrad v. Fisher, 37 Mo. App. 422; Young v. Kellar, 94 Mo. 581.

BURGESS, J.—This is an action of trover for eighty-six piles of cottonwood lumber, of the alleged value of $5,000, of which plaintiff claims to have been the owner, and which it alleges was wrongfully converted by defendant to its own use.

The petition alleges, "That, heretofore, to wit, on the twenty-eighth day of August, 1893, and ever since, plaintiff became, has been and now is, the owner of eighty-six piles of cottonwood lumber, known as and numbered one to eighty-six, both numbers inclusive, situated in the yard of defendant at Tiger Tail, Tennessee, and altogether containing six hundred and forty-eight thousand and one hundred feet, which said personal property was and is of the value of, to wit, five thousand dollars.   That afterwards, to wit, on the ———

day of May, 1894, said property came into the possession of the defendant, who, then and there, unlawfully converted the same to its own use and disposed of the same, to plaintiff's damage in the sum of $5,000," etc.

Defendant's answer, after admitting that both parties were corporations, denied every other allegation of plaintiff's petition, and by way of special defense, set up that the lumber in controversy was the remnant of a larger lot which defendant had manufactured for the Southern Transportation and Lumber Company, under a written contract set forth in the answer, by the terms of which contract defendant was to saw and stack upon its premises five million feet of lumber, which, upon the giving by the Southern Company of certain notes, was to be marked and set apart by defendant on defendant's premises for said Southern Company, as its property, subject to the giving of further notes for the purchase price before it should be removed. For the lumber so manufactured and set apart, said Southern Company was, at the end of each month, to give defendant its notes at ninety days, at the rate of $7 per thousand feet, and thereafter, within four months (navigation permitting), was to measure and take away the lumber, upon giving it ninety days' notice for the further sum of $1.30 per thousand feet.

The answer further stated that prior to the twelfth day of July, 1893, more than half of the lumber called for by the contract had been sawed and stacked and set aside by defendant for the Southern Company, which company had removed most of that half, giving therefor its notes at eight dollars and thirty cents per thousand feet; and that there remained in defendant's possession some of the stacked lumber, for which the Southern Company had given its notes at the rate of seven dollars per thousand feet, but which remnant it had never taken from defendant's possession; that on said twelfth day of July, 1893, said Southern Company had become insolvent and had defaulted in payment of a large part

of its said notes, and thereupon, on or about that day, agreed with defendant that the contract should be canceled as to that part of the lumber which had not then been manufactured and set apart, and that the remnant of stacked lumber still in defendant's possession should remain there until within a reasonable time, when the Southern Company should pay for it and take it away; that said Southern Company continued insolvent, never paid its said defaulted notes, and, though often requested by defendant, never paid the price of said remnant, which always remained in defendant's possession; that defendant, after waiting for more than a year, from July 12, 1893, gave notice to the Southern Company, and on August 14, 1894, sold said remnant still in its possession for account of said Southern Company at the best price it could obtain, and applied the proceeds of the sale towards satisfaction of the Southern Company's notes given for the purchase price which notes were then held by defendant and largely exceeded in amount the proceeds of that sale.

The plaintiff replied to defendant's answer, admitting the contract between defendant and the Southern Company, and the sawing and stacking of lumber, but denied all other averments of the answer, and set forth specially that on or about August 28, 1893, the Southern Company had made to plaintiff a bill of sale for the remnant of lumber stacked on defendant's premises and set apart for the Southern Company, and that plaintiff had given defendant notice of said bill of sale.

The facts are about as follows:

On the twenty-seventh day of July, 1892, the Tiger Tail Mill and Land Company entered into a written contract with the Southern Transportation and Lumber Company, by which the former sold to the latter five million feet of cottonwood lumber in stack on its mill yard, at Tiger Tail, Dyer County, Tennessee. Both parties to the contract had their principal

offices in the city of St. Louis, where the contract was executed.    The contract contains the following provisions:

"The said parties of the second part contract and agree to pay for said lumber in the following manner:    On the first of each month the amount of lumber on said mill yard that was sawed and stacked on this contract, during the previous month, shall be carefully estimated, and on the amount so estimated they shall execute to the parties of the first part their promissory note, payable at ninety days, for an amount equal to seven dollars per one thousand feet, for the whole amount so estimated, at the time in each month.    Said notes are not to be considered as an advance on said lumber but as a part payment on same, under this contract.    All lumber so estimated and on which payment has been made, as above stated, shall at the time of such payment be marked in the name of the said parties of the second part, and shall be their property, free from the claims of any person or persons whomsoever, except the balance of one dollar and thirty cents per 1,000 feet due said parties of the first part, which is to be paid as hereinafter provided.    Said parties of the second part contract and agree to remove said lumber from said mill yard within four months from time same is put in stack, said time to date from the first lumber stacked under this contract, and no lumber sawed under this contract is to remain on said mill yard over four months, navigation of the rivers permitting.    When said parties of the second part desire to remove any part of said lumber from said mill yard, they shall give said parties of the first part at least three days' notice of such desire, and agreement shall then be made between them as to who shall measure said lumber, according to the terms of this contract, and the party or parties so agreed on, shall go to said mill and measure such lumber as is intended to be removed, and for all lumber so measured, the said parties of the second part shall execute to said parties of the first part their ninety day note or notes, for an amount equal to one dollar and thirty cents for each 1,000

feet so measured, on which part payments have been made, as before provided; the one dollar and thirty cents so paid shall constitute the payment in full for said lumber, and a full receipted bill shall be given for such as is removed.   But it is agreed that in case the said parties of the second part desire to remove any lumber cut under this contract on which they have not made the payment of seven dollars as herein provided, they shall be permitted to do so, but shall at the time of the removal of such lumber, give their note or notes at ninety days for the full purchase price of eight dollars and thirty cents per thousand feet for all such lumber removed."

Under this contract, up to August 26, 1893, defendant had received notes from the Southern Transportation and Lumber Company for 3,500,000 feet of the lumber contracted for, of which 2,856,732 feet had been fully paid for in notes and removed, leaving a balance of 643,268 feet undelivered, for which notes had been executed, as per agreement.   On August 26, 1893, Gaertner, the secretary of the Southern Company, called upon the president of defendant at the St. Louis office of the latter and obtained from him the order following upon its superintendent at Tiger Tail, Tennessee:

"St. Louis, Mo., August 25, 1893.

"J. C. Mattison, Esq.,

"Superintendent Tiger Tail Mill:

"Dear Sir.—We owe the Southern Transportation and Lumber Company about 650,000 feet cottonwood lumber under our contract. They want to count off and estimate sufficient number of stacks to make about the amount.   You will please assist Mr. Gaertner in doing this.   He will brand the piles that he counts for the amount named.

"Tiger Tail Mill & Land Company,

"H. C. Bagby, President."

With this paper the secretary proceeded to Tiger Tail, presented the order, and accompanied by a representative of defendant delegated by the superintendent for the duty,

counted, measured and marked off 86 piles of lumber of the supposed quality called for by the contract, marking each separate pile once or oftener with full name of the Southern Company. For this lumber thus set apart and designated, defendant then had received and held (if not negotiated) notes of the Southern Company, none then due, the first maturing November, 1893, equivalent to $7 per thousand, as by contract provided, dated August 28, 1893; the Southern Company being then indebted to plaintiff for about $4,000, evidenced by notes then due and unpaid, executed to plaintiff an instrument upon its face an absolute bill of sale, for no specified consideration, but in general terms of for value received, confessedly a mortgage or collateral security for such indebtedness. This instrument sets forth in detail the measurements of each of the eighty-six piles of lumber as obtained at his, then recent, visit to Tiger Tail, by the secretary of the Southern Company, and recites "that it is subject to an equity in favor of the Tiger Tail Mill & Land Company amounting to $1.30 per thousand feet," and is recorded September 8th and 20th, 1893, in the respective counties of Tennessee embracing the mill, yards and property of the defendant.

The testimony shows that this order was submitted to plaintiff before the execution of the bill of sale, and that relying upon the additional security thereby acquired, plaintiff accepted the conveyance and agreed to indulge the Southern Company and T. T. Lewis its president (who had prior thereto become its accomodation indorser), in the payment of the notes representing its indebtedness, and had extended such forbearance even to the time of trial herein below. The representative of plaintiff, Jennings, September 11, 1893, in an interview for that purpose, informed the president of defendant, Bagby, of its execution. The lumber market continuing depressed, consequent on the financial stringency then prevailing, no further action respecting the eighty-six piles of lumber was taken by plaintiff or by the Southern Company

till the early spring of 1894, when the secretary of the Southern Company again visited Tiger Tail, found twenty-three piles (those numbered 63 to 86) of the allotted lumber missing, was informed by President Bagby, then at defendant's mill, that these piles had been removed by his orders, and that none of the lumber would be delivered by defendant.

Prior to this suit, plaintiff and the Southern Company united in a joint demand on defendant for the undelivered lumber, which was not complied with.

On August 14, 1894, the time defendant sold the lumber in question, the notes executed by the Southern Company to the defendant therefor, as well also as other notes, which were executed to secure the purchase price for the lumber which had theretofore been delivered, had not been paid.

From July 12, 1893, to August 14, 1894, when defendant resold the remnant there was a remnant in its possession, for which the Southern Company had prior to that given its notes at the rate of seven dollars per thousand feet, and those notes, together with others given for lumber delivered, had never been paid, but the witnesses differed as to the amount of the remnant.

On or about July 12, 1893, the Southern Company canceled its contract with defendant as to all the lumber not then sawed and set aside.

The plaintiff paid the Southern Company no money for the bill of sale, but only took it as collateral security for an indebtedness which was then past due. Neither the Southern Company nor the plaintiff, ever had physical possession of any of the lumber in controversy, but the actual possession had always remained in defendant, until it sold it in August, 1894.

The evidence was conflicting as to whether or not on July 12, 1893, and after that date, the Southern Company was insolvent, and as to whether or not on that day it agreed that the remnant in defendant's hands should so remain until paid for, or as security for the unpaid notes of said company.

It was also conflicting as to whether the amount of lumber called for by the bill of sale was in stack in defendant's yard on August 28, 1893, and also as to whether defendant ever had notice of the bill of sale prior to May 9, 1894, or ever acknowledged or acquiesced in the right of the Southern Company to make a bill of sale of the lumber to plaintiff.

The case was tried by the court, a jury being waived. Plaintiff asked the following declarations of law, which were refused, and plaintiff excepted:

1. "The court declares the law to be, that if the defendant accepted notes of the Southern Transportation & Lumber Company under the contract in evidence herein at the rate of $7 per thousand feet for 458,846 feet of lumber undelivered and remaining in defendant's hands on the 25th day of August, 1893, and that said notes on said date either had not matured, or if same had matured, had been renewed, and on said date none of said notes were due and unpaid, and on said date defendant executed and delivered the order unto the Southern Transportation & Lumber Company offered in evidence, and that relying on said order, the plaintiff accepted a bill of sale for 86 piles of lumber, and in consideration of said bill of sale agreed to forbear and did forbear pressing the payment of the indebtedness against said Southern Transportation & Lumber Company for a long period thereafter, and that said indebtedness at the trial of this cause still remained unpaid, then the defendant is not entitled for said notes to any lien as vendor or otherwise on said 458,846 feet of lumber, or any greater number of feet of lumber, for which said Southern Transportation & Lumber Company had executed and delivered the notes aforesaid to defendant, although the court may further find that said notes so executed and delivered to defendant thereafter became due and remained unpaid, or that said Southern Transportation & Lumber Company at the time of the execution of said notes was or thereafter became insolvent.

2. · "The court declares the law to be that if, about the 27th day of July, 1892, the defendant and the Southern Transportation & Lumber Company entered into the contract in evidence in this case, and if, under said contract, the Southern Transportation & Lumber Company, on August 25, 1893, had executed and delivered unto the defendant notes under said contract at the rate of $7 per thousand feet of lumber, and that at said date the amount of notes so delivered exceeded the amount of lumber delivered under said contract to the extent of 458,846 feet, or more, and that on said date none of said notes then unpaid were due, but either had not matured, or if matured, had been renewed; and if the court further finds from the evidence that, on said 25th day of August, the defendant, through its president, executed and delivered unto Gaertner, as agent of said Southern Transportation & Lumber Company, the order in evidence herein, and in conformity to said order 86 piles of lumber were counted, measured and marked off at Tiger Tail, Tennessee, by said Gaertner, on behalf of said Southern Transportation & Lumber Company, together with the agent or representative of defendant; and that thereafter, to wit, on or about the 28th day of August, 1893, said Southern Transportation & Lumber Company was indebted to plaintiff in the sum of $4,000 or more, evidenced by its notes then due and unpaid held by plaintiff; and that, in consideration · of the bill of sale of said 86 piles of lumber, to be executed by said Southern Transportation & Lumber Company unto plaintiff as security for said indebtedness of plaintiff, plaintiff agreed to forbear pressing the payment of said indebtedness against said Southern Transportation & Lumber Company; and that thereupon, under said agreement, said Southern Transportation & Lumber Company executed and delivered unto plaintiff the bill of sale in evidence herein for said 86 piles of lumber, and plaintiff caused the same to be duly recorded in the counties of Dyer and Lauderdale, Tennessee, wherein the yards of defendant containing said 86 piles were situated; and plaintiff,

in consideration thereof, actually forbore to press said indebtedness against said Southern Transportation & Lumber Company up to the trial of this case; and that thereafter, defendant, without the knowledge or consent of plaintiff, removed part of said 86 piles of lumber, and refused to deliver any of said 86 piles of lumber to plaintiff; then the plaintiff is entitled to recover in this action against defendant in the amount of the value of said 86 piles of lumber on the 31st day of May, 1894, less $1.30 per thousand feet of such lumber, with interest on said balance at the rate of 6 per cent per annum from said last day of May, 1894.

3.    "The court declares the law to be that under the evidence in this case the finding and judgment must be for the plaintiff."

The court then declared the law to be as follows:

"The court declares the law to be, that under the evidence in this case and under the contract executed by and between defendant and said Southern Transportation & Lumber Company in evidence herein, no tender of payment was required to be made by plaintiff to defendant of any sum before bringing this suit.

"The court declares the law to be that the so-called agreement of settlement of date September 19, 1895, executed between the defendant and the Southern Transportation & Lumber Company and Turner T. Lewis, offered in evidence herein, is not competent evidence against the plaintiff in this action."

The court then rendered judgment for defendant, and after unsuccessful motion for a new trial plaintiff appeals.

I.    The first question for consideration on this appeal is with respect to the sufficiency of the petition which defendant contends fails to state a cause of action, in that it does not allege that plaintiff ever had possession of the lumber in question, or the right to its possession.    The language of the petition is, "that heretofore, to wit, on the 28th day of August,

1893, and ever since plaintiff became, has been and now is, the owner, etc.; . . . that afterwards, to wit, on the ———— day of May, 1894, said property came into the possession of the defendant, who then and there unlawfully converted the same to his own use, and disposed of the same to plaintiff's damage," etc., but it does not allege that plaintiff had the possession or the right to the immediate possession of the lumber at any time. In Darlington on Personal Property, p. 36, the rule is announced, that the action of trover, "can be maintained only when the plaintiff has been in possession of the goods, or has such a property in them as draws to it the right of possession." [See, also, 26 Am. and Eng. Ency. of Law, 744, note 5, and authorities cited.] The action must be bottomed on the right of property in the plaintiff, who must have the right of possession as well as the right of property at the time. [Id.] While the use of formal and technical averments, which were necessary at common law to the statement of a cause of action, have been dispensed with by our code, and are no longer necessary, the same material allegations are necessary under it that were necessary at common law, and it is clear, we think, that at common law in order to state a cause of action in trover, the petition should state that the plaintiff had the possession or the right to the possession of the property sued for at the time of the conversion. [Bank of Little Rock v. Fisher, 55 Mo. App. 51.] And as no such averment, either expressly or by implication, is made, in the petition in this case, it must be held to fail to state a cause of action.

II. It is claimed by plaintiff that the lien of the Tiger Tail Mill and Lumber Company on the lumber was waived by it in express terms, and that before it could be revived or reasserted, plaintiff's right to the property had attached, being acquired upon the faith of the actions, declarations and conduct of that company. The argument is, that in August, 1893, when the bill of sale to plaintiff was executed by the

Southern Transportation & Lumber Company, delivered and recorded, the lumber at Tiger Tail landing had been set apart as the property of that company, and by this symbolical delivery, as well as by reason of the fact that at the time the purchase price in conformity to the contract had been paid by the delivery of notes given the vendor, the property in this lumber had passed to the Southern Company in the same manner and to the same extent as it would if the contract price had been paid in cash. Plaintiff took the bill of sale to this lumber as collateral security, and therefore occupied just the same position toward the defendant that the Southern Transportation and Lumber Company did, and this being the case, there are several grounds upon which the conclusion reached by the trial court may be upheld.

In the first place, there was some evidence tending to show that the purchase price for the lumber had never been paid—that the lien of the vendor had never been waived—and that there was no physical delivery of the lumber to the Southern Transportation and Lumber Company, and that it had always remained in the possession of defendant, down to August 14, 1894, when defendant resold it for the Southern Company's account.

In the second place, on or about July 12, 1893, the Southern Transportation and Lumber Company, by agreement with defendant, canceled its contract with defendant as to the lumber not then sawed and set aside, and then agreed with defendant that the lumber in question, which had been sawed and stacked, and set aside, and which then remained in defendant's yard, should remain in its possession for the payment of its notes given to defendant for this and other lumber. It is true that upon these questions the evidence was conflicting, but its weight was for the consideration of the court, and there being some substantial evidence to support the conclusion reached by it, the Supreme Court will not interfere.

For these considerations we affirm the judgment. GANTT, P. J., concurs; SHERWOOD, J., absent.