## SEBASTIAN COUNTY COAL & MINING COMPANY v. FIDELITY FUEL COMPANY, Appellant.

### Division One, July 30, 1925.

1. **CONVERSION: Pleading: Right to Possession.** A cross-petition to recover the value of personal property alleged to have been converted by plaintiff should plead facts which show not only defendant's ownership of the property, but his right to immediate possession of the property at the alleged date of conversion. And if the right to possession is not averred, either expressly or by implication, the pleading does not state a cause of action in trover. Nor does an allegation in the cross-petition that the plaintiff "wrongfully and unlawfully" converted the property to his own use by implication state that the defendant was entitled to possession, for such an averment is a mere conclusion of the pleader.

2. ———: ———: ———: **Lease: Counterclaim.** Where defendant is sued for past due rents, and in his answer he sets up the lease, which plainly shows by its terms that he was not entitled to possession of the property, which he alleges plaintiff converted to his own use, at the time the suit was brought, and he makes no allegation in his answer or cross-petition of a right to possession of the property, the court, upon proper motion, is authorized to strike out from his answer the allegations relating to conversion. He is not entitled to recover for the value of the property, whether his answer be considered an action for conversion, or for a counterclaim growing out of the same transaction.

---

Corpus Juris-Cyc. References: **Landlord and Tenant**, 36 C. J., Section 1352, p. 442, n. 30. **Pleading**, 31 Cyc., p. 57, n. 37. **Trover and Conversion**, 38 Cyc. p. 2068, n. 5.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*E. L. Burton* and *Goodwin Creason* for appellant.

(1)   The claim of defendant against the plaintiff arises out of the contract or lease set forth in plaintiffs petition as the foundation of plaintiff's claim, and is connected with the subject of the action brought by plaintiff.   By both the statute and the decisions, a counterclaim or cross petition may be set up by defendant in the same suit in which he is sued, and defendant's rights and claim against the plaintiff adjudicated in the same action.   Secs. 1232, 1233, R. S. 1919; Nelson v. Troll, 173 Mo. App. 51; Bealey v. Smith, 158 Mo. 515; Cosgrove v. Strange, 183 S. W. 691; Hope Lumber Co. v. Stewart, 241 S. W. 675; Ball v. Grismore, 239 S. W. 524.   (2)   Defendant's claim set up in its cross petition arose out of the same transaction and contract on which plaintiff relies for the foundation of its cause of action, and the fact that plaintiff wrongfully took over the property of the defendant and appropriated same to its, plaintiff's use, does not deprive the defendant of the right to set up its damages therefor as a counterclaim. ! Ball v. Grismore, 239 S. W. 525; Beally v. Smith, 158 Mo. 525. (3)   The courts construe liberally the statute relating to counterclaims in order to effectuate its obvious intent and purpose, and permit of the adjustment, in the same action, of claims that appear to be within its provisions, and may be intelligently settled in one proceeding.   Nelson v. Troll, 173 Mo. App. 67.   (4)   Under the decision of the Supreme Court of Arkansas the lease contract in question requiring personal property to be left on the premises of the lessor by the lessee until all rents and provisions of the lease had been performed, was in law, a mortgage.   Valentine v. Washington, 33 Ark. 795.   (5) The entry of the mortgagee for the purpose of fore-

closure in order to be effective must be in strict con-
formity with the provisions of the contract, and directions
of the statute effecting the same. Otherwise, it is in-
valid. 27 Cyc. 1440. (C). (6) The plaintiff in the in-
stant case failed to comply with the provisions of the
contract and with the statutes in many respects. (a)
It failed to furnish the defendant a verified statement of
its account against the defendant, showing the items,
debt, credit, and balance due as provided by Section
6417, Revised Statutes of Arkansas, pleaded by the de-
fendant. (b) Plaintiff failed to apply before a justice
of the peace for the appointment of appraisers, and to
have the property appraised as provided by Sections
6419 and 6420, Revised Statutes of Arkansas, and pleaded
by the defendant. (c) Plaintiff took and appropriated
to itself, defendant's property, alleged by the defendant
to be of the value of $30,000, without attempting to fix
a fair market price therefor, or to settle the matter of
its value by arbitration, as provided in the lease in ques-
tion. (b) The lease in question, being a mortgage un-
der the Arkansas law, where it was passed and to be en-
forced, the method of appropriation of the property by
the plaintiff, was unlawful, and willfully oppressive to
defendant's great damage; and for such act defendant
may maintain an act for damages against the plaintiff.
Missouri Real Estate Co. v. Sims, 179 Mo. 679; Anderson
v. Joseph, 95 Ark. 573; 27 Cyc. 1505.

*Cyrus Crane, O. E. Swan* and *John H. Lathrop* for
respondent.

The alleged cross-petition of defendant was prop-
erly stricken out. (a) It did not state a cause of ac-
tion. Bank v. Tiger Tail Mill Co., 152 Mo. 145; O'Toole
v. Lowenstein, 177 Mo. App. 662. (b) There was no
pleading of a compliance by the defendant with the
terms of the lease, especially as to arbitration. (c) The
decisions of Arkansas were not properly pleaded. Mus-
ser v. Musser, 281 Mo. 649.

GRAVES, J.—There are two cases pending here numbered respectively 24017 and 24018. The Sebastian County Coal & Mining Company originally brought suit in the Circuit Court of Jackson County against John Mayer and Mayer Coal Company. Upon the filing of a third amended petition the Fidelity Fuel Company was made a party defendant and brought into court. From the petition it appears that on January 1, 1909, the Cherokee Construction Company and the Midland Valley Railroad Company were the owners of certain coal lands in the State of Arkansas, and upon such date leased the same to the Fidelity Fuel Company for a period of twenty years from the 1st day of January, 1909, at an annual rental of $7,650, payable quarterly on the first days of January, April, July and October, of each year. About the 1st day of October, 1910, the plaintiff herein purchased all the interests of the lessors in such lease by the Cherokee Construction Company and Midland Valley Railroad Company. About January 1, 1914, the royalty or rents, by agreement between this plaintiff and the Fidelity Fuel Company, were reduced from $7,650 per annum (payable quarterly) to $6,400 per annum, payable quarterly on the dates mentioned in the original lease, i. e. $1600 on the first days of January, April, July and October of each year. In the lease and in the subsequent agreement the lessee was to pay all taxes in addition to the sums indicated as rents.

The plaintiff is a New Jersey corporation, the Fidelity Fuel Company is a Missouri corporation, and the Mayer Coal Company is a Kansas corporation, and John Mayer a resident of Kansas City, Missouri. This is merely historical, as no question arises thereon. We have outlined the petition as to facts up to and including the year 1914. From thence on the petition had best speak for itself, and the language of the petition is as follows:

"Plaintiff further states that while the said lease was in full force and effect, the defendant John Mayer and Mayer Coal Company acquired the entire capital

stock or a controlling interest thereof of said defendant Fidelity Fuel Company, and that while the said lease was in full force and effect during July or August of 1915, the said defendant Fidelity Fuel Company, deeming it to its advantage to have the arrangement hereinafter described, made for the operation of the properties leased under and by virtue of the said lease aforesaid, requested the plaintiff to give its consent in writing, as required by said lease to be given by the lessor, for an assignment of the said lease of a sub-letting of said leased property to certain mine operators or workers, and that the plaintiff, in response to said request, agreed to give such consent in writing upon the express condition that the defendant Fidelity Fuel Company as principal and lessee, and the defendants John Mayer and Mayer Coal Company, individually, as sureties or guarantors, should become and remain obligated personally and individually for the carrying out and the performance of all the terms and conditions of said lease on the part of the lessee; that the defendant Fidelity Fuel Company, lessee, agreed to and accepted said condition in consideration of the said sub-lease, and that the defendants John Mayer and Mayer Coal Company, in writing, assured and guaranteed to plaintiff that said agreement to sub-lease said property as made by the defendant Fidelity Fuel Company, and that, if the said Fidelity Fuel Company or the sub-lessee should default in all or any of the terms of said lease, the defendants John Mayer and Mayer Coal Company would see that plaintiff should suffer no loss or damage on account of the fault of said Fidelity Fuel Company or said sub-lessee.

''Plaintiff states that default has been made in the payment of the quarter yearly installment of rent amount-to $1600, which became due on the 1st day of January, 1916, under the provisions of said lease modified as hereinbefore set out, and also in the payment of the quarter yearly installment of rent amounting to $1600, which become due on the 1st day of April, 1916, and also in the payment of the quarter yearly installment of rent

amounting to $1600, which became due on the 1st day of July, 1916, and that the said lessee and the said sublessee under said assignment and each of them, have failed, refused to pay the taxes on said premises and improvements for the year 1915, and that to protect the property from default thereunder, plaintiff has been compelled to pay and has paid $395.81 in addition to the said installments of rent for $1600 each above mentioned, making in all a total of $5195.81 to which plaintiff has become entitled as aforesaid under and by virtue of said lease and said modification of said lease and said supplemental agreement; that the payment of each one of said sums, aggregating as aforesaid $5195.81, was demanded by this plaintiff from Fidelity Fuel Company, and also from defendants John Mayer and Mayer Coal Company and each of them upon the respective maturities of said installments of rent, respectively, and upon the payment of said sum for taxes, but that payment has not been made to plaintiff of said total, nor of either one of said sums, nor of any part thereof, nor of any interest thereon, and that each of said sums and said total and all interest thereon are by reason of the premises still due to plaintiff from defendants Fidelity Fuel Company, John Mayer and Mayer Coal Company and are altogether unpaid.

"Wherefore, plaintiff asks judgment against defendants for $5195.81, and interest at the rate of six per cent per annum on the sum of $1,600 from January 1, 1916, and on the sum of $1600 from the 1st day of April, 1916, and on the sum of $1,600 from the 1st day of July, 1916, and on the said sum of $395.81 from the — day of ———, 1916, and for all costs in this matter incurred and expended."

Upon a trial the plaintiff had judgment against the Fidelity Fuel Company for $7095.70, and the Fidelity Fuel Company has appealed, and its appeal is our Case Number 24018. Trial was before the court. The judgment was in favor of John Mayer and Mayer Coal Company, and from this judgment the plaintiff appealed, and

such case is our Number 24017, *ante,* page 104. The facts as to the connection of the several defendants are such, that we are required to write two opinions, and outline the case as to each. In the instant case we are concerned only with the pleadings and the facts as between plaintiff and the Fidelity Fuel Company. This defendant first filed an answer to the third amended petition, in which it attempted to plead certain Arkansas statutes and decisions of the Supreme Court of that State, and thereafter alleging, after having plead the original lease in full, that the Fidelity Fuel Company had on the premises tools and equipments of the value of $30,000, ''which the plaintiff wrongfully and unlawfully seized and converted to his own use, all to the damage of this defendant in the sum of thirty thousand dollars.'' The answer prayed for a judgment of only $24,000, thus in a way recognizing its default upon the rents and taxes sued for by the plaintiff.

To this portion of the answer there was a demurrer filed, and sustained by the court. Defendant, Fidelity Fuel Company, this defendant, then filed a second amended answer, in which after certain material admissions as to things pleaded by plaintiff, and a general denial as to remainder of the matters alleged in the petition, then contained a cross-petition setting up the same facts pleaded in its answer to which a demurrer had been sustained as to the parts relating to tools, etc., being unlawfully converted by plaintiff. This cross-petition likewise set out and plead in full the original lease.

Later motion was filed by plaintiff to strike out the said cross-petition, which motion was sustained, and to this action of the court defendant duly excepted, and preserved its exceptions by a term bill. Reply was a general denial. As said, upon a trial the plaintiff had judgment for $7095.70 and costs. The principal question is the propriety of the action of the court in striking out the ''cross-petition'' as it is denominated in the second amended answer of this defendant, to the third

amended petition of the plaintiff. This suffices for an outline of the case, in so far as the appeal of defendant Fidelity Fuel Company is concerned.

I. While defendant had a general denial in its answer, no attempt is made to refute the allegation that the installments of rent of $1600 each due respectively of January 1st, April 1st, and July 1st, 1916, had ever been paid. Nor is there any claim by defendant that it paid the taxes for the year 1915, all of which it was obligated to do under the lease. These taxes aggregated $385.81. By evidence it is shown that statements as to each of the three items of rent, and the items of the taxes, were made out and sent to the Fidelity Fuel Company, as such items became due and payable, and that they had not been paid. Defendant introduced no evidence. The court could do but one thing, so far as the plaintiff's claim is concerned. It did that thing in finding for the plaintiff for the items sued for, and for the interest thereon after demand. Only two witnesses testified, and their short statement of facts, and the admission by stipulation, constitute the case from the record before us. By stipulation it is admitted that plaintiff had acquired the rights of the original lessors in the lease. There is no evidence showing a wrongful ouster of defendant from the premises, but on the other hand there is an agreement by the terms of which the Fidelity Fuel Company, with the assent of plaintiff, turned over the personal property belonging to it to the men working in Mine No. 10. So that unless there was error in striking out the alleged "cross-petition" the judgment against the Fidelity Fuel Company will have to be affirmed. Learned counsel stress the fact that there was error in the matter of striking out this alleged "cross-petition." Of this in the succeeding paragraph.

II. The vital question, and the only question which gives us jurisdiction in this case, is the sufficiency of defendant's cross-petition, which was stricken out by the court. The same question had been raised by demurrer

to that portion of the first amended answer, and this demurrer had been sustained. Defendant did not stand upon the judgment on the demurrer, but filed a new answer, alleging practically the same facts. This portion of the new answer was stricken out upon motion, and it is that action which is for review here. Taken as a whole this cross-petition seeks to recover upon the theory of conversion of personal property. The Arkansas statutes, and decisions attempted to be pleaded, cut but little figure in this case. These tools and other implements were all covered by the terms of the lease. In Paragraph 12 of the lease is this language:

"But it is hereby expressly agreed that upon such termination of this lease the said lessors shall have the right as regards the said working tools, mining implements, machinery, tracks, pit cars, rails and miners' houses, declared as aforesaid to be the property of the said lessee, to purchase the same from the said lessee at a fair market price, to be determined, if not mutually agreed on, by arbitrators as hereinafter provided for. If the said lessors shall not avail themselves of such right of purchase then the said lessee may remove the same, provided all royalties then due the said lessors by the said lessee be paid and all and singular the other covenents and agreements of this lease be performed, such right of removal, however, to terminate ninety days after the termination of said lease."

Paragraph twenty-five of the lease (which lease is pleaded in full in the alleged "cross-petition") says:

"Twenty-fifth. In the event of such termination of this lease for a breach of contract by the lessee, the said lessee shall not have the right to remove from the premises any of the coal which may have been mined previously to such termination of this lease, or working tools, machinery or other property, until the said lessee has made full satisfaction to the lessors for any and all damages which they may sustain by reason of such delay or refusal to comply with the terms of this lease; and in that event none of said properties shall be removed from

said premises until all royalties and other payments due the lessors hereunder shall have been paid to the said lessors; otherwise, such coal, tools, machinery and property shall become the property of the said lessors. And in the event of any controversy arising out of any matter in this paragraph contained, the same shall be referred to the board of arbitrators as hereinbefore provided, and all said properties shall remain on said premises until a decision is reached by the arbitrators."

Following this we have Paragraph 26 of the lease, which reads:

"Twenty-six. It is hereby expressly agreed that nothing herein contained shall interfere with the right on the part of the lessors to distrain for rent due and in arrears under the terms of this lease."

The point made by respondent is, that a suit for conversion cannot be maintained, unless the party seeking to so recover, is entitled to the possession of the property at the time suit for conversion is brought. The cross-petition shows that all this property is upon the leased premises, but it is averred that it is in the possession of the American Smokeless Coal Company, alleged to be a lessee of the plaintiff. This gives a general outline of the respondent's contention, which was sustained by the trial court. At least the trial court sustained the motion to strike out. If other facts become material, they can be noted in connection with the discussion of the law.

III. We omitted in the paragraph, supra, the 24th paragraph of the lease, which reads:

"Twenty-fourth. It is further covenanted and agreed by and between the parties hereto that in the event that the said lessee shall delay or refuse to comply with the terms of this lease and to keep and perform the covenants and agreements on its part herein stipulated and provided for, then the said lessors shall, at their option, after sixty days' notice to the lessee, have the right to re-enter upon the demised premises in as full

and complete possession as if the term of this lease were fully performed and ended by limitation.''

The cross-petition in effect charges a re-entry, but does not allege a failure to give the sixty days' notice. We quote the terms of the lease, because no Arkansas statute is pleaded that forecloses the rights of parties to contract. Nor is there any decision pleaded (whether properly pleaded or not) which announces a doctrine to the effect, that parties either in making contracts, leases, or even mortgages are precluded from putting their own terms and conditions therein. We shall not therefore discuss the case of Musser v. Musser, on the matter of pleading the decisions of other states. So our views of that case would be but picked upon wayside issues. We have views upon it, however. The material portions of the lease, set out, supra, will lend light upon the legal question of the sufficiency of the cross-petition.

In this case there was default in the compliance with the terms of the lease at least as early as January 1, 1916. This gave the plaintiffs under the terms of section 24 of the lease, after sixty days' notice, a right of re-entry. There was default again on April 1, 1916, and again on July 1, 1916. August 5, 1916, this suit was filed to recover the defaulted royalties or rents, and no payment made after this formal notice of the defaults. There was likewise default in the payment of taxes for the year 1915. The answer alleges that plaintiff took possession of the property on June 15, 1917, which was many months after the default, and more than sixty days after what might have been a legal termination of the lease for defaults. The plaintiff could have terminated the lease by notice of sixty days, at any time after January 1, 1916, yet there is no averment in the cross-bill of a failure to give such notice. When the defendant pleaded the lease as to his right to recover for conversion, it should have pleaded facts which not only showed ownership in the property, but the right to possession of the property. There are no facts pleaded to obviate the terms of the lease as to the right to possession.

The law in this State (and our rulings are in accord with the general rule) is to the effect that one suing for the conversion of property must plead facts to show that it was entitled to immediate possession of the property at the alleged date of conversion. In this respect the cross-petition was defective, and fatally defective. The mere allegation that plaintiff ''wrongfully and unlawfully'' converted the property to its own use does not meet the situation, for such is a mere conclusion of the pleader. The facts showing a right to possession and the ownership, should have been stated. In Bank v. Tiger Tail Mill & Land Co., 152 Mo. l. c. 156-7, the rule is well stated thus:

''The first question for consideration on this appeal is with respect to the sufficiency of the petition which defendant contends fails to state a cause of action, in that it does not allege that plaintiff ever had possession of the lumber in question, or the right to its possession. The language of the petition is 'that heretofore, to-wit, on the 28th day of August, 1893, and ever since plaintiff became, has been and now is, the owner, etc.;   . . . that afterwards, to-wit, on the —— day of May, 1894, said property came into the possession of the defendant, who then and there unlawfully converted the same to his own use, and disposed of the same to plaintiff's damage,' etc., but it does not allege that plaintiff had the possession or the right to the immediate possession of the lumber at any time. In Darlington on Personal Property, p. 36, the rule is announced, that the action of trover, 'can be maintained only when the plaintiff has been in possession of the goods, or has such a property in them as draws to it the right of possession.' [See, also, 26 Am. & Eng. Ency. Law, 744, note 5, and authorities cited.] The action must be bottomed on the right of property in the plaintiff, who must have the right of possession as well as the right of property at the time. [Id.] While the use of formal and technical averments, which were necessary at common law to the statement of a cause of action, have been dispensed with by our

code, and are no longer necessary, the same material allegations are necessary under it that were necessary at common law, and it is clear, we think, that at common law in order to state a cause of action in trover, the petition should state that the plaintiff had the possession or the right to the possession of the property sued for at the time of the conversion. [Bank of Little Rock v. Fisher, 55 Mo. App. 51.] And as no such averment, either expressly or by implication, is made, in the petition in this case, it must be held to fail to state a cause of action.''

The foregoing case is cited with approval in Catering Co. v. Glancy, 294 Mo. l. c. 456, whereat we used this language:

''That it is necessary, in order to maintain an action for conversion, for the party aggrieved to have possession, or to have been entitled to possession, at the time of the conversion, is well settled. [Bank v. Tiger Tail Mill & Land Co., 152 Mo. 145; Cook v. Smith, 200 Mo. App. 218; O'Toole v. Lowenstein, 177 Mo. App. 662; Schwald v. Brunjes, 139 Mo. App. 516; Golden v. Moore, 126 Mo. App. l. c. 522.] Title to, or a right of property in, a chattel will not alone support an action in conversion. It must be coupled with actual possession or a right of immediate possession. [Bank v. Tiger Tail Mill & Land Co., supra; O'Toole v. Lowenstein, supra; Schwald v. Brunjes, supra; 38 Cyc. 2045.]''

The allegations of the cross-petition, considering that it pleaded the lease *in haec verba*, and a sub-lease from defendant to certain miners of Mine No. 10, totally fails to state a cause of action, or a good counterclaim. With these views we need not discuss the Arkansas statutes and cases attempted to be pleaded. Nor need we discuss the matter as to whether or not it grew out of the same transaction. Even by the lease to the miners, mentioned, supra, the right of possession of this property passed from defendant, and this lease is in the record. There is nothing to show that such right of possession ever reverted to defendant. This lease was by

agreement of parties made subject to the original lease, but did not displace it in any particular.

It is clear that the trial court was right in striking out that portion of the answer of defendant, and that plaintiff's judgment should be affirmed as to the Fidelity Fuel Company. It is so ordered. All concur, except *Atwood, J.,* not sitting.