Neil MICKELSON, Appellant,

v.

AIRMEN, INC., et al., Respondents.

No. WD 37002.

Missouri Court of Appeals, Western District.

June 24, 1986.

simply conclude it is marital property under the     statute.

Steven W. White, Desselle, White Allinder & Grate, Independence, for appellant.

Phillip B. Grubaugh, Daniel F. Church, Deacy & Deacy, Kansas City, James W. McKenzie, Jr., Thompson, McClure & Lieberman, Atlanta, Ga., for respondents.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

Plaintiffs, Neil and Carol Ann Mickelson, appeal from the trial court's judgment in favor of defendants Charles Easley and David Holt on a common law conversion claim. Two airplanes and an aircraft engine comprised the bulk of the property involved in this action. The Michelson's contend the judgment was against the weight of the evidence and the court erroneously applied the law of conversion.

■ The case was tried to the court. Thus the judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, and unless the trial court erroneously applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The parties did not request and the court did not prepare findings of fact or conclusions of law. This being the case, "all facts are presumed found in accord with the judgment, and the judgment is to be upheld under any reasonable theory presented and supported by the evidence." *Lohrmann v. Carter,* 657 S.W.2d 372, 376 (Mo.App.1983).

In order to explain the events leading to this lawsuit, it is necessary to supply background regarding two additional parties indirectly involved in this appeal. East Kan-

sas City Aviation, Inc. (East K.C.), a corporation, operated a charter aircraft courier service in 1982 and 1983, the time relevant to this appeal. The sole shareholder of East K.C. was plaintiff Neil Mickelson. Mickelson owned two twin engine aircraft, a 1969 Aerostar and a 1976 Aerostar. Mickelson leased both aircraft to East K.C. for use in the courier service. These leases were in force at the time of the alleged conversion.

The Mickelsons originally filed suit against Airmen, Inc. (Airmen) and the two defendants, Holt and Easley. Easley was President of Airmen, and Holt served as Vice-President and general manager of operations. In April, 1983, East K.C. leased hangar and office space from Airmen at the Kansas City Municipal Airport. The lease was executed for a term of one year.

At the time the lease was executed, East K.C. was in Chapter 11 bankruptcy proceedings. The bankruptcy court reviewed and approved the lease between East K.C. and Airmen before it took effect. A specific provision of the lease empowered Airmen to repossess the premises and to change the locks in the event East K.C. defaulted on its rental payments.

East K.C. defaulted on its rental payments and in early July, 1983, Mickelson informed Airmen that East K.C. was shutting down the operation and needed a couple weeks to remove property from the premises. East K.C. received a notice of eviction by letter dated July 5, 1983. On July 10, Airmen, pursuant to the lease, reentered the premises to take possession and changed the locks on the doors. The property locked in the hangar and office included the two airplanes, an aircraft engine, a television set, a wall clock, and some bar glasses.

Toward the latter part of July, Mickelson sneaked into the hangar and retrieved the 1969 Aerostar, flying it to Olathe Airport, where it remained until it was repossessed. Consequently, Airmen moved the 1976 Aerostar from the hangar to a tie down location and deflated the tires to prevent removal of the aircraft. East K.C. then filed an application in bankruptcy court for an order to hold Airmen in contempt. The application requested the immediate release of the 1976 Aerostar, the aircraft engine, the television, the wall clock, and aircraft engine parts. Moreover, the application stated Airmen had "actual knowledge that the Debtor [East K.C.] has *possessory rights* in the described personal property." (Emphasis added).

After a hearing in September, the bankruptcy court determined that Airmen's conduct in locking up the premises was grounded in a reasonable legal position and did not justify a finding of contempt. The court then directed the trustee to take charge of and inventory the property held by Airmen.

Subsequent to the order, a secured creditor repossessed *both* Aerostars. Soon thereafter, the East K.C. bankruptcy proceeding was converted from a Chapter 11 reorganization to a Chapter 7 liquidation. The Mickelsons also filed for personal bankruptcy in November, 1983. However, they were not listed as debtors in the East K.C. bankruptcy proceeding.

■ The suit underlying this appeal was tried in January, 1985. Judgment was entered against the Mickelsons, who timely perfected their appeal on April 22, 1985. On April 12, 1985, Airmen filed a Chapter 11 bankruptcy petition, and pursuant to 11 U.S.C. 362(a)(1), the bankruptcy court issued a stay of any judicial action or proceeding against defendant Airmen. The automatic stay provisions of the bankruptcy code apply only to Airmen. *See Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 314 (7th Cir.1983). The parties have stipulated that this appeal may proceed as to Easley and Holt notwithstanding the bankruptcy of Airmen.

■ Since there were no findings of fact or conclusions of law, this court must affirm the trial court's judgment under any reasonable theory supported by the evidence. *Lohrmann, supra,* at 376. Easley and Holt maintain the Mickelsons failed to submit sufficient evidence to sustain a

cause of action in conversion because they did not have an immediate right to possession of the property allegedly converted. The Mickelsons set out five instances in which the trial court erroneously applied the law of conversion, and specifically complain that they, the Mickelsons, had the immediate right to possession of the aircraft. This issue will now be addressed since it is dispositive of the appeal.

■ "In Missouri, in order to maintain a suit for conversion, the plaintiff must have title to, or a right of property in, *and a right to the immediate possession of the property concerned at the [alleged date] of conversion.*" *Twellman v. Lindell Trust Co.,* 534 S.W.2d 83, 97 (Mo.App. 1976). (Emphasis added). It is not enough that a defendant may have converted the property wrongfully or unlawfully. The party bringing the action must have been entitled to immediate possession at the time of the conversion. *Sebastian County Coal & Mining Co. v. Fidelity Fuel Co.,* 310 Mo. 158, 274 S.W. 774, 777 (1925). Since conversion is a possessory action, ownership alone is not enough to support the action. The plaintiff must have had or been entitled to immediate possession at the time of conversion and when the suit is brought. *State ex rel. Lipic v. Flynn,* 358 Mo. 429, 215 S.W.2d 446, 451 (banc 1948).

■ The evidence shows the hangar and office space subject to the lease between East K.C. and Airmen were locked up on July 10, 1983. In them were the airplanes and property in question. At trial Mickelson testified at that time both aircraft and the other property personally belonged to him. However, all the other evidence shows that the lessee, East K.C., not Mickelson, the owner-lessor, had the immediate right to possession of the property.

First, as to the aircraft, East K.C. had a leasehold interest in both Aerostars in July, 1983. The lease concerning the 1976 Aerostar was introduced into evidence. Though the lease concerning the 1969 Aerostar was not introduced into evidence, Mickelson testified the terms were the same as those in the 1976 Aerostar lease.

He also testified neither lease had been terminated according to its terms when Airmen locked the doors.

Second, the contempt application filed by East K.C. stated the debtor, who was East K.C. and not Mickelson, *had possessory rights to all the property described in the application.* The described property included the 1976 Aerostar, as well as the aircraft engine, television, wall clock, and engine parts. The 1969 Aerostar was not included because Mickelson had already retrieved the aircraft. In response to the application, the bankruptcy court directed the trustee to take charge of the property and make an accounting to the court.

Finally, the attorney representing East K.C. in the bankruptcy proceeding testified at this trial the aircraft were leased by East K.C. and the engine belonged to one of the airplanes. He stated the miscellaneous items were used by the company. His testimony was after the lock-up, he filed the contempt application to obtain the release of all the personal property and the remaining aircraft to East K.C. as opposed to Mickelson.

The evidence cited was presented in the plaintiff's own case. Though the Mickelsons owned the property in question, the evidence shows they were not entitled to immediate possession of the property in July, 1983. Furthermore, by the time of the trial, the Mickelsons were not entitled to possession of the aircraft since both airplanes had been repossessed by a secured creditor. *See Lipic, supra,* 215 S.W.2d at 451.

This court agrees with the defendants that the Mickelsons failed to submit sufficient evidence to sustain a cause of action in conversion, their only legal theory. At the time of the claimed conversion East K.C. was the only entity entitled to immediate possession of the property. The plaintiffs' argument that the lease between Mickelson and East K.C. was automatically rescinded or abandoned when East K.C. announced it was closing operations is simply without merit on these facts. Both

leases required a 30–day termination notice, and Mickelson never took any steps to comply with the termination provision of the leases.

Since the Mickelsons failed to make a submissible case, their other claims of trial error are immaterial and of no decisional moment on appeal. *See Sydney v. Coca-Cola Co.*, 569 S.W.2d 11, 12 (Mo.App.1978).

Under the standard of review there was substantial evidence to support the trial court's judgment. The trial court committed no error of law and the judgment is affirmed.

All concur.