COX, by her Curator, Cox, vs. BELTZHOOVER.

1. The term heir does not always refer to a person whose ancestor is dead, but is often used to designate the presumptive heir of  a person in existence.   Thus, in a note payable on demand to "the heirs of A," A being alive, it may be shewn by averment that the term "heirs" was intended to mean the presumptive heir.

2. The terms of the note constitute a latent ambiguity which may be explained by parol evidence.

*Cox, by her Curator, Cox, vs. Beltzhoover.*

## ERROR to St. Louis Circuit Court.

LACKLAND, *for Plaintiff in error, insists:*

1. That the contract is valid, the promisee is sufficiently described by the terms of the note.—The word heirs, as used in the note, is merely *discriptio personae,* and it has several significations known in law, and the plaintiff was an heir in one sense when the note was given. See Cruise's Digest, tit. Devise, ch. 10, sec. 23; Bac. Abr., tit. Heir, B; Bacon vs. Fitch, 1 Roote, 181; Lockwood vs. Jessup, 4 Conn. R., 272, 2nd series or vol. 9.

We are to look at the intent, rather than the grammatical or technical sense. When a word is capable of two or more significations, it shall be understood in that which will have some operation, rather than that which will have none. Powell on Contracts, 377, 382, 224; Swift's Dig., 1st vol., 222· 3, 225.

2. That if the word heir be of itself inapplicable to the plaintiff, it might to be explained and applied by averments. Swift's Dig., vol. 1, p. 608; the Medway Cotton Manufactory vs. Adams, et al., 10 Mass., 360; the New York African Society vs. Varick, et al., 13 John., 38; Wells vs. Barrett, 2 Stark. Cas., 29.

The promise is to take effect immediately, because it is the assumption of a debt by defendant which he admits to be then due; is liable to be enforced immediately; is to draw interest immediately, and the maker intended to make the promise to a person at the time in existence and capable of being a party to the contract and calling for its enforcement. As to who the promisee in the note is, is a latent ambiguity which can be explained and applied by the proper averments, and the declaration contains these averments. Supposing the facts to be true, as set forth in the declaration, the plaintiff ought to recover.

HOLMES, *for Plaintiff in error.*

The case of Yantis, et al., vs. Yourie, of the decisions of this Court, not yet reported, is believed to be in point in this case.

TODD & KRUM, *for Defendant in error, insist:*

That the Circuit Court did not err in sustaining said demurrer—

1. Because the promise or undertaking of the defendant was not made to the plaintiff by name, nor does the plaintiff's declaration contain any averments which show that the promise or undertaking of the defendant was in fact made to the plaintiff.

2. The undertaking of the defendant, by the terms of the note, is to the *"heirs of Elizabeth Cox by her marriage with Wm. Cox."* The promise, therefore, by any reasonable construction of the note itself, is made to *all the heirs* of Elizabeth Cox by said marriage, &c.; but the plaintiff has not, by any proper averments, shewn that the plaintiff is the person intended and designated by the term *heirs* in the note.

3. From the averments in the plaintiff's declaration, the court must presume that the said William and Elizabeth Cox were alive at the time of the making of the said note, and that they are still living. Nothing is averred to rebut this presumption.

4. The case made by the plaintiff's declaration is in substance nothing more than an action upon a note payable on the happening of a certain event, but which has not yet occurred. This suit, therefore, so far as appears from the declaration, was instituted prematurely.

*Cox, by her Curator, Cox, vs. Beltzhoover.*

5. In the absence of proper averments to the contrary, the *heirs* of Elizabeth Cox, by her said marriage, &c , cannot be definitely known until the decease of the said Elizabeth and William, or one of them.

6. The fact averred in the plaintiff's declaration, that the contract of marriage between said Elizabeth and William Cox had been annulled, &c., does not determine that said note is payable to plaintiff; nor does the averment that the plaintiff, at the time of the institution of the suit, &c., was the only child and presumptive heir of the said Elizabeth, determine that the note is payable to plaintiff.

7. There is no averment that the promise was made or intended to be made to the heirs of said Elizabeth, born of the said marriage with said William, and which had been annulled previous to the making of said note. The said Elizabeth and William, at the time of the making of the said note, were capable of contracting marriage, notwithstanding said divorce, and it is not inconsistent with any thing contained in the plaintiff's declaration to assume that said Elizabeth and William had again intermarried at the time of the making of the said note.

8. If the averment *that the marriage between the said William and Elizabeth had been annulled*, &c., is material to show the plaintiff's right of action, then such averment is defective, for it is not shown or averred that the said *court of chancery in Illinois* had jurisdiction or authority in the premises, nor are the proceedings of the said court verified with a *prout patet per recordam;* therefore, and by reason of such defects, the demurrer of the defendant is well taken.

9. The averment in the plaintiff's declaration that *the defendant promised the plaintiff, by the appellation of the heirs of Elizabeth Cox,* &c., to pay said sum to the plaintiff, &c., is not true in fact, as the profert of the note clearly shows; therefore such averment neither aids nor establishes the plaintiff's cause.

10. To constitute an heir in the proper sense, of the term, the death of the ancestor is essential.

11. When the words of a contract are clear, and express a consistent meaning and idea, they cannot be contradicted by parol evidence, and therefore no averment in the declaration can be suffered to contradict them. In this case, the declaration states the note to be to the "heirs," &c., and also a divorce before the making of the note, and the plaintiff to be the only child, &c.— Taking, then, the plaintiff's supposition that there could be no more children by that marriage, it follows that this only child could not have been solely contemplated. No one living, in particular, was intended, but such as should be heirs, at a time when there might be more than one heir, as in case of this child having children and then dying and then her mother dying. *The word heirs is thus shown to express a clear and consistent idea.*

McBRIDE, J., *delivered the opinion of the Court.*

This was an action of assumpsit brought by Cox against Beltzhoover in the Circuit Court of St. Louis upon the following instrument of writing:—

"I, Samuel S. Beltzhoover, hereby agree to pay the heirs of Mrs· Elizabeth Cox, by her marriage with William Cox, the sum of seven hundred and seventy-five dollars, it being the amount due them from Frederick W. Beltzhoover and assumed by me, in part consideration for a lot of ground on block seventy-six, and improvements, this day conveyed to me by said Frederick W. Beltzhoover. St. Louis, November 12, 1842."        (Signed)    SAMUEL S. BELTZHOOVER."

The declaration contains ten counts. In several counts, the above instrument of writing is substantially set out, and it is averred that by virtue of a decree in chancery, rendered by the Circuit Court of Cass county, in the State of Illinois, on the 22nd May, 1839, and before the said note was made, the contract of marriage then existing between said Elizabeth and William Cox, was annulled; that at the time said note was made, the plaintiff in error was, and now is, the child and presumptive heir, and the only presumptive heir, of the said Elizabeth Cox, by her marriage with William Cox; and said defendant, in and by said note, promised the said plaintiff, by the appellation of the heirs of Mrs. Elizabeth Cox by her marriage with William Cox, and describing her as such, to pay her, &c.

To this declaration the defendant filed a general demurrer, which the court sustained and entered judgment thereon. The plaintiff brings the case here by writ of error.

The principal question is, whether the contract set out is such an one as can be enforced in a court of law, and if so, whether the declaration contains the necessary averments.

The first branch of the question involves a legal construction of the word "heirs," as used in the contract. Without pretending to examine and make an analysis of the numerous authorities which have been referred to by counsel, (for we doubt not but that there has been much subtilty of reasoning employed on the subject) we shall content ourselves with referring to a case or two which meets the question fully and decides it correctly.

In 4 Conn. R., 272, second series or 9th vol., the action being on the following note:—

"*Greenwich*, May 1, 1822.

"On demand, for value received, I promise to pay unto the heirs of Jonathan Jesup, one hundred dollars, with interest till paid, as witness my hand. (Signed) PETER LOCKWOOD."

*Bissell, J.*—"The only question raised upon this motion in error regards the validity of a note of hand. The note is made payable to the heirs of Jonathan Jesup, who is admitted upon the record to have been living when the note bears date. It is averred in the declaration that the plaintiffs below were the children and presumptive heirs, and the only presumptive heirs of the said Jonathan Jesup, and that the promise contained in the note was made to them by that title and appellation.

"These averments, if well made, are admitted by the demurrer. But it is said that this contract is on the face of it so utterly void as that it

cannot be aided by any averments whatever; that there are no promisees to this note—no person in existence to whom it is made payable.

" This is obviously the only ground upon which the case of the plaintiff in error can be rested with the least hope of success; because, if the note be made payable to any person, although there may be an ambiguity with regard to the person intended, there is no doubt that such a defect may be supplied by averment, and parol evidence is always admissible to explain a latent ambiguity. This rule obtains universally in the construction of wills. Even a misdescription may be corrected by averment, and a plaintiff sueing on a promissory note which purports to be payable to a person of a different name, may aver and show by evidence that he was the person intended." 2 Starkie R., 29; 3 Stark. Ev., 1021, 1025; 10 Mass. R., 360.

" Is then the note in question void, on the ground that it mentions no promisees, and of course contains no promise ? The affirmative of this proposition rests on the legal maxim, *quod nemo est haeres viventis*. The accuracy of this maxim, as a general proposition, is unquestionable; and it is undoubtedly true, that to constitute a person a full and complete heir, the death of the ancestor is essential. But it is also true, that the term *heir* is not always used in law as denoting a person whose ancestor is dead. There are many cases where it applies though the ancestor be living, and there it means the heir apparent. In this sense it is frequently used in the statutes and in legal documents. Thus it is used in the Statute 25 Edw., 3, by which it is made treason to kill the heir of the king. In the same sense it is used in writs of ravishment of wards *quare filiam et hairedem rapuit;* and there are numerous instances under wills where the word *heir* has been used in the same sense. Thus, a devise to the heir of a person living has been repeatedly adjudged good, when it was manifestly the intent of the testator to designate the heir apparent.— 2 Vent, 311; 1 P. Wm., 229; 2 Black. R., 1010; 2 Desaus Ch. R., 94; 7 Bingham, 226. The word *heir* does not then necessarily and *ex vi termini* import the death of the ancestor.

" It may be, and, as we have seen, often is, used to denote the heir apparent or presumptive heir of a person living; and in this sense it was undoubtedly used in the case now before us. There can indeed be no question in regard to the intention of the parties to this contract. The note is on demand, bears interest from the date, and is capable of being enforced immediately. It was not to wait the death of the ancestor, but to take immediate effect. The promise was made to persons in exist-

ence—to persons capable of receiving and enforcing the contract. That they are also sufficiently designated, we have only to apply a very familiar and well settled principle, and that is, that in the construction of contracts, the intent of the parties is to govern. See also 1 Root, 181."

The argument in this opinion covers fully both branches of our enquiry, and maintains incontrovertibly the right of the plaintiff to maintain her action.

The judgment of the Circuit Court ought therefore to be reversed, and, the other Judges concurring, the same is reversed, and the cause remanded.