MIKE DEFEO, RESPONDENT, v. F. C. GOODWIN, APPELLANT.*

Kansas City Court of Appeals. July 6, 1926.

*Corpus Juris-Cyc References: Contracts, 13CJ, p. 665, n. 72; p. 667, n. 21; Tender, 38Cyc, p. 142, n. 74; p. 143, n. 80; p. 144, n. 87; p. 145, n. 97; p. 152, n. 55, 57; p. 158, n. 15; Trover and Conversion, 38Cyc, p. 2031, n. 70; p. 2068, n. 5.

*Benj. W. Grover* and *Joseph R. Lasson* for respondent.

*Beardsley & Beardsley* and *E. L. Noyes* for appellant.

BLAND, J.—This is a suit for the conversion of the furniture of the Hendryx Hotel located at 414 East 8th street in Kansas City, Missouri. There was a verdict and judgment in favor of plaintiff in the sum of $2500 and in favor of defendant upon his counterclaim in the sum of $1000 and defendant has appealed.

The evidence shows that plaintiff was a tenant of defendant under a lease of the above-mentioned hotel, not including the furniture. The lease, which by its terms was to expire on February 14, 1922, provided for a rental of $165 per month, payable in advance. The lease recited that the tenant should keep the premises in good repair and at the end of the term he should yield them up to the landlord "in as good condition as when the same was entered upon by lessee, loss by fire, unavoidable accident and ordinary wear excepted." Plaintiff owned the furniture in the hotel. The lease contained a chattel mortgage upon said furniture to secure the payment of the rent and for the performance of the covenants and agreements in the lease. The mortgage provided that "in case of default in payment of the debt on day when same ought to be paid" the landlord might take possession of the property and sell the same at public sale to the highest bidder for cash, first giving ten days public notice of the sale.

There was storeroom adjoining the hotel, belonging to defendant, not covered by the lease. This room was rented by plaintiff under a tenancy from month to month at $85 per month. By reason of the fact that whiskey was sold by the plaintiff in the storeroom which, evidently, was a part of the premises on which the hotel was located, the United States District Court, on September 30, 1921, permanently enjoined the plaintiff, together with Nick Defeo, J. M. Johnson and the defendant herein, F. C. Goodwin, from keeping or selling on the premises known as the Hendryx Hotel any intoxicating beverages containing more than one-half of one per cent of alcohol by volume, and further enjoined said persons, their agents and servants "from occupying said building in any manner for one year from date of decree or until further order of the court." On December 27, 1921, plaintiff herein pleaded guilty in the Federal court to the selling of the intoxicating liquor aforesaid and his punishment was assessed at imprisonment in the county jail of Jackson county, Missouri, for a period of two months. A part of the sentence was served in the Jackson county jail and a part in the Pettis county jail.

The Federal court permitted the opening of the hotel by the W. J. Bland Post of the American Legion from October 30 to November 3, 1921, on account of the holding of the American Legion convention in Kansas City about that time. The record does not show at whose instance the hotel was opened. Following this, the premises remained closed until defendant herein gave a bond under which the court permitted him to take possession of the property on February 16, 1922. During the time the hotel was closed under the decree of the Federal court the water pipes and some of the radiators in the hotel froze and burst. This was caused by the fact that there was no heat in the hotel. The bursting of the water pipes caused the ceilings in some of the rooms to give way and damage to the furniture. To repair the building defendant, after he took possession of the premises, spent $538. When defendant took possession of the hotel under the order of the Federal court, he opened it up for business, using the furniture in controversy, and when plaintiff was released from jail he demanded the furniture of the defendant which defendant refused to deliver to him, and this suit was filed on March 1, 1922. Plaintiff paid the rent to October 13, 1921, but did not pay any rent thereafter. On May 10, 1922, defendant procured the furniture to be sold in pursuance of the chattel mortgage contained in the lease. At this sale defendant purchased the property, paying therefor the sum of $356.25. The notice of sale recited that forfeiture of the lease was declared on the ground that plaintiff had "failed and refused and neglected to pay the rent."

The petition alleged that between the dates of July, 1921, and February, 1922, defendant appropriated to his own use the furniture in the hotel and the fixtures in the storeroom, which furniture and fixtures were the property of plaintiff; that the reasonable value of said furniture and fixtures was the sum of $5850, judgment for which plaintiff prayed and in addition the petition asked for the sum of $2500 as punitive damages. Defendant's answer consisted of a general denial and the setting up of his mortgage upon the property, that the mortgage was given to pay the rent which might accrue and that the mortgage was foreclosed and the property legally and lawfully sold under the mortgage; that the proceeds of the sale were applied to the rent which plaintiff owed defendant; that a part of the bar room fixtures was placed in storage for plaintiff and the other part was in the basement of the rented premises and the petition stated that defendant tenders said bar fixtures to plaintiff. The answer further consists of a counterclaim for the unpaid balance of the rent to the expiration of the lease, amounting to $660 and an additional sum of $510 alleged to be due on account of the rental of the store in question, which was rented from month to month at $85 per month. In the counterclaim it was alleged that the lease of the hotel provided that plaintiff should keep the premises in repair and deliver up the same to the defendant at the end of the term in as good condition as when received by plaintiff, etc.; that plaintiff failed to keep this condition of the lease and that when defendant recovered possession of the premises the same was damaged in the sum of $500. Defendant prayed judgment in the sum of $1670 less the sum of $356.25, received at the sale of the property under the mortgage, or a balance of $1313.75. In the reply it was pleaded that ''plaintiff on numerous occasions offered to tender the rent money to defendant and still offers to tender said money to defendant but that defendant at all times had refused said offer.'' The reply further consists of a general denial.

Defendant insists that his instruction in the nature of a demurrer to the evidence at the close of all the testimony should have been given for the reason that it is claimed that when plaintiff made demand for the furniture on or about February 28, 1922, defendant was in possession of the same after conditions of the chattel mortgage were broken and for this reason he had the absolute title to the property subject only to the equitable right of plaintiff to redeem, which could only be enforced in a court of equity. Plaintiff admits that, after condition broken, the chattel mortgagee in possession of the property is the legal owner of the property and that the mortgagor cannot make a tender of the debt releasing the mortgage lien when such conditions are present. But insists that in the case at bar that no condition of the mortgage was broken when demand for the

furniture was made, and in support of this contention states that plaintiff was willing to pay the rent but that defendant waived the tender which "kept the right of possession" in plaintiff and that defendant "could not thereafter claim a breach of the condition of non-payment having himself made it impossible for" plaintiff to pay. And in this connection it is insisted that defendant at no time relied upon any other breach of the mortgage than that of failure to pay rent as an excuse for taking possession and selling the property.

In reference to the tender of the rent, plaintiff testified as follows: That in the latter part of July, 1921, after the government had raided the premises and "caught us" he found that the place was going to be closed and at that time stated to defendant that, "I was willing to pay the rent and wanted the hotel;" that he would pay the balance of the rent under the terms of the lease, "Every dime I owed him, four months' rent," "If you will give me my furniture back;" that defendant said, "No" and the witness then asked, "Why do you want to keep my furniture" and defendant replied, "If you want to get your furniture, you will have to go to court about it;" that plaintiff "would have to go to law about it." At this time the rent had been paid to October 13th. It will be noted that at this time defendant did not say anything indicating that he would refuse to take the rent under any conditions but merely refused the conditional offer of plaintiff to pay the balance of the rent.

Plaintiff had a second conversation with defendant in reference to the payment of the rent. There is some conflict in plaintiff's testimony as to when this was, but there was room for the jury to say that it was after October 13, 1921, or at a time when a month's rent was due. For although plaintiff testified that the second conversation was two or three weeks after the first, he said that at the time of the second conversation he owed $165 for one month's rent on the premises. As before stated, the rent was paid to October 13th. As to the second conversation plaintiff testified that he again talked to defendant about the furniture—

"  . . . and I wanted to know what he wanted to do, if he would give it back to me, I was willing to pay for it. I made him a proposition, I only owed four months' rent on the lease. . . . I still was willing to pay him for the furniture what I owed him or I wanted to make an agreement with him, I only had four months to go, if he would renew the lease I was willing to pay for one year's rent if he would give me the place. He said, 'No, I don't want you in there.' "

Plaintiff further testified that he continued to run the hotel until the 30th of September, when it was closed by the Federal court and that defendant "always took the money any time I offered it to him," that "I did not send him any checks after October 14, 1921, I spoke

to him;'' that he offered no check after that but that he did offer cash but did not testify as to how much but that he usually carried about $200 on his person. He stated that this would not pay four months' rent but ''I want you to understand that Mr. Goodwin said he did not want me in there under any consideration, and would not accept my money. I never tendered him any money, I offered to pay him. The place was closed. I did not take out any money and show it to him.''

When plaintiff returned from Sedalia he found out that defendant had opened the hotel for business and on February 28, 1922, asked him what he was ''going to do about it,'' ''Are you going to use my furniture in there?'' and defendant replied in the affirmative. In reference to this conversation plaintiff testified, ''So I still made him an offer. I wanted to get my furniture back. I was willing to pay every dime I owed him to get my furniture and fixtures out of there and he would not do it. . . . I talked with Mr. Goodwin about it. He told me like I said before, that he would not let me have it. I had to go to court about it.'' That ''from the time the injunction was granted up to the present time, I sent Mr. Goodwin no check and I did not hand him any money or show him any money.'' He further testified that defendant was unwilling to deliver the furniture to him although plaintiff ''demanded everything that was coming'' to him—

''Q. You demanded everything that was coming to you? A. Yes, sir.

''Q. And you offered him no money and sent him no check? A. I offered him money if he was willing to accept it. I did not pull out any money and show it to him in his hand.''

Plaintiff's brother, Nick Defeo, testified that he was present at the conversation had between plaintiff and defendant in February, 1922, and that plaintiff stated to the defendant, ''I would like to get my furniture;'' ''I want to pay you what I owe you whatever it is;'' that the amount ''was figured up between both of them'' and amounted to seven or eight hundred dollars and that plaintiff said, ''I will pay you until my lease expires, . . . I want to get my furniture out or otherwise I will pay you for a year in advance provided you give me three years more on the lease;'' that defendant said, ''He would not consider that at all.'' Plaintiff then said, ''Either let me take the furniture out or renew the lease for three more years,'' but defendant said ''he would not consider taking the furniture out.'' Defendant testified to the effect that plaintiff at no time offered to pay the unpaid rent.

Plaintiff does not contend that he ever made a formal tender of the rent but relies upon the claim that defendant waived the tender. Defendant insists that the reply does not plead a waiver of the

tender. But aside from the question of pleading, we think that plaintiff's evidence wholly fails to show either a valid tender of the rent or a willingness and readiness to make an unconditional tender at the time defendant refused, according to plaintiff's testimony, to accept the rent. It is not denied that at the time of the first conversation no rent was due and that a tender of payment before due is not sufficient legal tender (see Illingworth v. Miltenberger, 11 Mo. 80, 87), but plaintiff claims—

"The testimony was and the jury found that the respondent offered to pay all that was due appellant *at the time the rent was due,* but that the appellant, by words and actions, refused this offer. The actual tender of the money was, under the unbroken authorities in this State, therefore waived by the appellant." (Italics ours.)

At the time of the second conversation, when plaintiff told defendant that he was willing to pay the four months' unpaid rent, the defendant told him to the effect that he would not receive the rent under any conditions. This was a waiver on defendant's part of the actual counting out and offering of the money to the defendant. But regardless of this, plaintiff should have introduced evidence tending to show a willingness and readiness on his part to make an *unconditional* tender of the money. In the case of Kitchen v. Clark, 1 Mo. 430, defendant had made certain plans and specifications for plaintiff. Plaintiff demanded the plans and one McGinnis on his behalf offered to pay the defendant for the same on their delivery to him but defendant said, "You cannot get them, go to my lawyer." The court in discussing the case stated, l. c. 434, 435—

"There was no tender of payment when this demand was made— only a declaration of readiness to pay when delivery was made. This will not answer. There must be an *unconditional* offer to pay what is due. If the person to whom it is payable, when informed of the intention of the person proposing to pay, refuses to receive it at all, the party having it to pay need not go through the idle form of counting it out. But, first of all, there must be a clear and plain offer to pay, without exacting anything in return, in order to constitute a tender."

In the case at bar plaintiff did not make an unconditional offer to pay the rent but offered to pay it only upon condition that defendant give him his furniture. This condition plaintiff had no right to make. At the time of the second conversation the furniture was tied up by the injunction in the Federal court, the decrees reciting that defendants therein, including the defendant herein, and their agents and servants were enjoined "from occupying said building in any manner." Defendant was not in possession of the furniture at the time plaintiff first demanded the same from him or at any other time until in February, 1922, and plaintiff's demand that defendant

return his furniture to him was wholly unwarranted. What plaintiff did merely consisted of a conditional offer to pay the rent, which was not good. [Kitchen v. Clark, supra; Danciger Bros. v. Amer. Express Co., 172 Mo. App. 391, 403; Adcox v. Telegraph Co., 171 Mo. App. 331, 338; Ruppel v. The Mo. Guarantee, etc., Association, 158 Mo. 613, 622; Saussenthaler v. Surety Co., 197 Mo. App. 112, 116; Henderson v. Cass County, 107 Mo. 50, 56, 57; Bridges v. Smith, 213 S. W. 858; Parker v. Supreme Tent, etc., 191 Mo. App. 508, 514, 515; 38 Cyc. 152, 153.]

Aside from this the burden of proof was upon plaintiff to show that he was willing and ready to actually count out the money and present the same to defendant, although in view of defendant's refusal to accept the rent it was unnecessary to actually count it out and present it. [Kitchen v. Clark, supra.]

"The actual production of the money is dispensed with if the party is ready and willing to pay the same, but is prevented by the party to whom it is due expressly saying that it need not be produced, as he would not accept it, or if he declares that he will not receive it, or refused to remain until it is produced, or repulses the debtor, or makes some unjustifiable demand as a condition of accepting the tender. So an actual production is waived where, the doctor being about to produce, the tenderee refused to receive, not on the ground that the tender is not produced, but upon some other and distinct ground, or refuses to deal with the debtor, referring him to an attorney of the tenderee; or where the agent to whom the offer is made denies having authority to receive the money, when he in fact had such authority. Where a debtor goes to the place designated for payment, at the time appointed, with the money or thing to deliver it, and the person who is to receive it is not present, the money or thing need not be produced. But the actual production of the money is held not to be dispensed with by a bare refusal to receive the sum proposed and demanding more; *and it is held that in order to establish a waiver there must be an existing capacity to perform.* [38 Cyc. 144, 145.] (Italics ours.)

"While the formal requisites of tender may be waived, there can be no waiver of performance, unless there is an ability to perform. . . . Where a party offering to pay has had that offer refused, he is not entitled to treat it as a tender, unless he shows that he was ready and willing to do what he proposed. He can suffer no loss by having been deprived of an opportunity to do what he was in no condition to do. The burden of showing an ability to do a particular thing offered to be done is upon the party making the offer." [Supreme Tent, etc., v. Fisher, 90 N. E. 1044, 1046, 1047.]

Plaintiff's evidence fails to show that he was in a position to make a tender of the rent in case defendant had elected to accept it.

''The law in that respect is stated in Hunt on Tender #226:

'' 'Actual ability, accompanied by the immediate physical possibility of reaching out and laying hold of the money or thing to be delivered and making a manual proffer of it, or placing it in a position so that the tenderee, if he choose, may lay hold of it, must not only exist as a fact, but it must be made to appear at the time that the party has the money or thing ready for actual delivery.'' [Greenwood v. Watson, 171 Fed. 619, 620.]

''In making a tender, the tenderee must have it in his power, at the time of his offer, to pay the amount due, and must have title to the thing tendered; and the actual ability to deliver the money must not only exist, but it must be made to appear at the time of the tender. Mere ability to pay on the day fixed for payment is not sufficient, nor is an ability to borrow; but the money must be in the creditor's immediate control ready for delivery, that is to say in his immediate possession or within convenient reach.'' [38 Cyc. 142, 143.]

The only testimony as to the ability of plaintiff to have paid defendant the amount of the rent had defendant consented to receive it, was that plaintiff usually carried $200 on his person, which he admitted was not sufficient to pay the rent. The burden was upon plaintiff to show his power and ability at the time to pay the amount due, that he had the money in his immediate control, ready for delivery (Eastern Oregon Land Co. v. Moody, 198 Fed. 7, 18), and this he has failed to do. Plaintiff—

'' . . . must show not only the facts constituting the waiver of the formal tender, but that he was able and willing, at the time fixed, to perform on his part, except in those cases where a tender is rendered unnecessary by the previous declaration, act, or omission of the other party.'' [31 C. J., p. 665.]

There was no previous declaration on the part of defendant that he would not receive the rent money if offered unconditionally. We have examined the cases cited by plaintiff and deem them not in point.

Defendant being in possession of the furniture on February 28, 1922, after condition broken, any tender of the rent at that time would not have availed plaintiff anything. [Jackson v. Cunningham, 28 Mo. App. 354, 362; Cook v. Smith, 200 Mo. App. 218, 222.] However, we might say even at that time the tender was not unconditional nor did plaintiff show that he had the ability to make tender had defendant elected to take the money. Of course, it is well settled that a tender of money must be kept good (13 C. J., p. 667) and even had plaintiff shown that in October, 1921, he had made a proper tender or that he was then able to do so and tender was waived, and that by reason thereof there was no condition of the mortgage broken in reference to the payment of rent at the time defendant took possession

of the furniture, he would not be entitled to claim this as an excuse for his failure to make a proper tender of the rent on February 28, 1922. So, even conceding that plaintiff showed a waiver of technical tender of the actual cash on the part of defendant at the time of the conversation in October, 1921, and conceding his contention that had he been in position to take advantage of that waiver there would have been no breach of the condition of the mortgage at the time defendant took possession of the property in February, 1922, still he did not show that he was in that position and failed to show facts sufficient for him to profit by any such waiver and it is quite apparent that he is not entitled to recover as for a conversion of the furniture in the hotel.

However, we see no reason why plaintiff is not entitled to recover as for a conversion of the fixtures in the store building. There is nothing suggested by defendant justifying his conduct in refusing to turn these over to plaintiff when plaintiff demanded them. Defendant had no lien on these fixtures for his rent either for the store or the hotel and should have given them to plaintiff when he demanded them. For this reason the case will not be reversed outright. There was manifest error committed on the part of the court as the record shows that the case was tried and submitted to the jury by plaintiff on the theory that he was entitled to recover upon the ground that defendant converted the furniture in the hotel. Undoubtedly the instructions given on behalf of plaintiff on this theory were erroneous. However, at another trial, in order for plaintiff to recover for the conversion of the store fixtures it will be necessary for him to amend his petition so as to show that he was entitled to the immediate possession of the store fixtures at the time of their alleged conversion. [Sebastian County Coal & Mining Co. v. Fidelity Fuel Co., 274 S. W. 774; Bank v. Tiger Tail Mill & Land Co., 152 Mo. 156, 157; Bank of Little Rock v. Fisher, 55 Mo. App. 51; St. Louis Catering Co. v. Glancy, 294 Mo. 438, 456, 457; Cook v. Smith, supra.]

Judgment in favor of plaintiff is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.