**Clay Dee OWENS, Plaintiff-Appellant and Cross-Respondent,**

v.

**AUTOMOBILE RECOVERY BUREAU, INC., and Winters National Bank and Trust Company, Defendants-Respondents and Cross-Appellants.**

**No. KCD 27358.**

Missouri Court of Appeals, Kansas City District.

Oct. 12, 1976.

Motion for Rehearing and/or Transfer Denied Nov. 4, 1976.

Application to Transfer Denied Jan. 10, 1977.

Joseph W. Amick, Kansas City, for plaintiff-appellant.

Lloyd S. Hellman, Ann M. Whittier, Achtenberg, Sandler, Balkin & Hellman, Kansas City, for defendants-respondents.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Clay Dee Owens (Owens), by way of a petition in two counts, obtained a jury verdict in the amount of $750.00 (Count I) against Winters National Bank and Trust Company (Bank) as compensatory damages for conversion of his 1967 Pontiac automobile and a verdict in the amount of $240.00 (Count II) against Automobile Recovery Bureau, Inc. (Bureau) as compensatory damages for conversion of certain items of personal property claimed to have been present in the automobile.

Cross-appeals were taken, with Owens claiming the trial court erred in refusing to submit[1] the issue of punitive damages as pleaded with respect to both instances of conversion and the Bank and Bureau claiming the trial court erred in overruling their respective motions for judgment notwithstanding the verdict because (1) Owens failed to make a submissible case of conversion with respect to either the automobile or the items of personal property claimed to have been present therein and (2) Owens was not the real party in interest since he filed a voluntary petition in bankruptcy after the instant action was commenced.

In March of 1971, Owens, who at that time was a resident of Ohio, obtained a loan from the Bank, a national bank with its main banking house located in Dayton, Ohio. A promissory note and security agreement were executed by Owens in favor of the Bank; the security agreement listed a 1967 Pontiac automobile owned by Owens as collateral. Both Ohio and Missouri had previously enacted the Uniform Commercial Code.

In November of 1971 Owens moved to Kansas City, Missouri, taking the 1967 Pontiac automobile with him. In the summer of 1972 several of the scheduled payments due the Bank were delinquent. The Bank made arrangements with the Bureau, a Missouri corporation, to act as its agent, and directed it to repossess the automobile. However, instead of repossessing the automobile, the Bureau merely located and contacted Owens, made arrangements with and permitted him to pay the scheduled amounts that were in arrears, and permitted him to retain possession of his automobile. Shortly thereafter the Bureau submitted a bill to the Bank in the amount of $130.15 for the services just mentioned which the Bank refused to pay until March 13, 1973. Evidence existed to support a finding by the jury that the Bank initially refused and delayed payment of the Bureau's bill for the reason that it deemed the charge to be unreasonable.

In February of 1973 the final three payments due the Bank under Owens' promissory note became delinquent. The Bank made arrangements with the Bureau to act as its agent for the purpose of repossessing Owens' 1967 Pontiac automobile. The Bureau effected peaceful repossession of Owens' 1967 Pontiac automobile the night of March 7, 1973, or the early morning of March 8, 1973. This was accomplished by the Bureau engaging a towing service which removed Owens' 1967 Pontiac from a public street in front of his place of residence. Owens had parked his Pontiac automobile on the public street during the late afternoon or early evening of March 7, 1973, and first noticed that it was gone the following morning. The towing service took Owens' automobile to its unfenced storage lot where it was kept the remainder of the night. The following day the towing service delivered Owens' automobile to the Bureau at the latter's fenced storage lot.

On March 9, 1973, Owens contacted the Bureau at its storage lot for the purpose of redeeming his Pontiac automobile. The president of the Bureau informed Owens that the Bureau would not relinquish possession of the automobile unless Owens paid $252.00, the unpaid principal and accrued interest due and owing on the note, $92.00 incurred for repossession of the automobile, and the $130.15 heretofore mentioned which the Bureau had previously billed the Bank for. No prior demand had ever been made on Owens to pay the $130.15. Owens "offered" to pay $344.00 ($252.00 plus $92.00) to redeem his automobile but refused to pay the additional $130.15 demanded by the Bureau. Owens contended that he did not owe the $130.15 because it was both unreasonable and totally unrelated to repossession of his automobile. The Bank had directed the Bureau not to relinquish possession of the automobile to Owens unless he paid the $130.15 in addition to the $344.00.

1. The legal correctness of the instructions tendered by Owens and refused by the trial court re punitive damages has not been questioned.

The Bureau refused to relinquish possession of the automobile to Owens, as directed by the Bank, unless he paid the amount of $474.15. Although Owens did not physically proffer $344.00 in legal tender to the Bureau at the time, evidence is contained in the record from which the jury could reasonably find that he was able and willing to do so within the redemption period.

The following day Owens returned to the Bureau's lot to obtain possession of certain items of personal property owned by him and which he claimed were in his automobile when it was repossessed. The Bank neither had nor claimed any security interest in these items of personal property. Owens claimed that said items of personal property (a tool box and tools, and a number of tape cassettes) were in his automobile when he parked it on the public street in front of his house. The president of the Bureau and two of its employees testified that they never saw the tool box, tools, or tape cassettes at any time in Owens' automobile and had no knowledge of their whereabouts. Moreover, Owens was freely allowed to inspect his automobile at the Bureau's lot and was permitted to remove and take all other items of personal property found therein at the time.

On appeal Owens does not question the Bank's right to have repossessed his automobile at the time or the manner in which it was done, nor does he claim that it was guilty of conversion when it did so. He contends, however, that the Bank unlawfully converted his automobile when it refused to permit him to redeem it unless he paid the sum of $130.15 heretofore referred to in addition to the unpaid principal and accrued interest due and owing at the time ($252.00) and the expense incurred in repossessing the automobile ($92.00). The Bank contends that conversion of the automobile did not occur, as and when contended by Owens, because he failed to comply with Section 9–506 of the Uniform Commercial Code (hereinafter referred to as Section 400.9–506, RSMo 1969) which exclusively governed his right to redeem the automobile. Section 400.9–506, supra, reads as follows:

*"Debtor's right to redeem collateral*

At any time before the secured party has disposed of collateral or entered into a contract for its disposition under section 400.9–504 or before the obligation has been discharged under section 400.9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney fees and legal expenses."

On appeal the parties have assumed, sub silentio, that Missouri law controls with respect to the legal meaning to be ascribed to the above mentioned section of the Uniform Commercial Code, as evidenced by the fact that they rely upon Missouri cases to advance and support their respective positions. This court has no way of knowing whether the parties advertently or inadvertently made this assumption because they failed to cite any authority or advance any arguments whatsoever to support its legal correctness. This court will proceed to construe the above mentioned and pivotal section of the Uniform Commercial Code and the respective arguments tendered by the parties on the bases of Missouri case law, parenthetically noting that legal justification for doing so (but expressly refraining from deciding) appears to lie in Section 400.9–102(1), RSMo 1969. In this connection see: *Associates Discount Corp. v. Cary,* 47 Misc.2d 369, 262 N.Y.S.2d 646 (Civ.Ct. 1963) and Weintraub, *Choice of Law In Secured Personal Property Transactions: The Impact Of Article 9 Of The Uniform Commercial Code,* 68 Mich.L.Rev. 684 (1969–1970).

The Bank argues that since its initial possession of Owens' automobile was lawful [Section 400.9–503, RSMo 1969] it continued to be lawful because Owens did not tender "fulfillment of all obligations secured by

the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, [and] in arranging for the sale . . .", prescribed by Section 400.9–506, supra, as a condition to his right of redemption. Stated more definitively, the Bank submits that Owens' "offer to pay" all sums claimed due and owing to the Bank and the Bureau except the $130.15 did not legally measure up to "tendering fulfillment" of the matters specified in Section 400.9–506, supra, and therefore he was not entitled to redeem the automobile and possession thereof by the Bureau acting as agent for the Bank continued to be lawful. The Bank contends that nothing short of tender in the strict legal sense could suffice, regardless of all else, because recognition of the concept of waiver of tender in the context of Section 400.9–506, supra, would inevitably work havoc in the marketplace. The inevitability of havoc in the marketplace has not been demonstrated with any force of logic or reason; it has merely been assumed by the Bank. In order to succumb to this assumption, this court would have to ignore even the most basic concepts of fairness and justice and summarily hold that the various provisions of the Uniform Commercial Code must inevitably be construed in favor of a secured party and against the debtor. The judicial process is more demanding if justice is to be served.

Owens counters the position taken by the Bank by arguing that "tendering" in Section 400.9–506, supra, is used in the sense that attaches to "tender" in the common law and carries with it all the peripheral common law principles that are associated with it, including waiver of tender, since the term is not otherwise defined in the Uniform Commercial Code. His position finds support in Section 400.1–103, RSMo 1969: "Unless displayed by the particular provisions of this Act, the principles of law and equity, . . . shall supplement its provisions." The Bank has failed to cite, and this court has been unable to find, any particular provision of the Uniform Commercial Code which could be said to have "displaced" the application of common law principles with respect to the scope and meaning of tender as used in Section 400.9–506, supra. Although dealing with the application of pertinent common law principles other than tender, the following cases from other jurisdictions which have adopted the Uniform Commercial Code allay any doubt that obtaining common law principles in this state relative to tender are controlling and decisive: *Central Nat. B. & T. Co. of Enid v. Community B. & T. Co.,* 528 P.2d 710 (Okl.1974); *Levin v. Nielsen,* 37 Ohio App.2d 29, 306 N.E.2d 173 (1973); *Gorge Lumber Company v. Brazier Lumber Company,* 6 Wash.App. 327, 493 P.2d 782 (1972); *Chicago Roller Skate Mfg. Co. v. Sokol Mfg. Co.,* 185 Neb. 515, 177 N.W.2d 25 (1970); and *In re Mel Golde Shoes, Inc.,* 403 F.2d 658 (U.S.C.A. 6th Cir. 1968). *Maltz v. Jackoway-Katz Cap Co.,* 336 Mo. 1000, 82 S.W.2d 909, 912 (1935) constitutes broad general support for the conclusion reached: " 'It is a familiar rule of construction that where a statute uses words which have a definite and well known meaning at common law it will be presumed that the terms are used in the sense in which they were understood at common law, and they will be so construed unless it clearly appears that it was not so intended.' " Therefore, the case law of this state is deemed controlling and decisive as to the scope and meaning of tender as used in Section 400.9–506, supra.

Waiver of tender, firmly entrenched in the law of this state, finds clarity of expression in *Miran Investment Co. v. Medical West Building Corp.,* 414 S.W.2d 297, 303–304 (Mo.1967): " 'tender is waived where the tenderee . . . takes any position which would render a tender, so long as the position taken by him is maintained, a vain and *ideal* (idle) ceremony . . .' ". See also: *Citizens State Bank of Nevada v. Wales,* 469 S.W.2d 750, 757 (Mo.App.1971); *Huth v. Picotte,* 154 S.W.2d 382 (Mo.App.1941); and *Leesburg State Bank & Trust Co. v. Merchants Bank of Kansas City,* 142 S.W.2d 94 (Mo.App.1940). The Bank's unyielding and undeniable insistence that Owens pay the $130.15 in addition to the unquestioned and admittedly

owed sum of $344.00 before it would permit him to redeem his automobile amounted to a waiver by them of tender in the strict legal sense of the latter amount. The $130.15 may be fairly and accurately described as an expense incurred by the Bank for servicing the loan it made to Owens. In any event, it was not an "obligation secured by the collateral", or an expense "reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition", or "in arranging for the sale", or "reasonable attorneys' fees", or "legal expense" within the purview of Section 400.9–506, supra. For all practical purposes the Bank was attempting to hold Owens' automobile as collateral for a charge incurred by Bank and owed to the Bureau for servicing the loan, same constituting a charge nowhere to be found in Section 400.9–506, supra. The Bank's adamant insistence on exacting this non-legitimate charge from Owens before it would permit him to redeem his automobile as provided in Section 400.9–506, supra, effectively excused or waived any obligation on Owens' part to tender in the strict legal sense the amount he legitimately owed.

■ The Bank appears to subordinately argue that notwithstanding a waiver of tender, Owens bore, but failed to carry, the burden of proving that he was able and willing to discharge all proper financial obligations imposed by Section 400.9–506, supra. As pointed out in *Defeo v. Goodwin*, 221 Mo.App. 789, 287 S.W. 1075, 1079 (1926), a party relying upon waiver of tender, with certain exceptions, must nevertheless show that he is "able" and "willing" to perform at the required time. The evidence in this case was sufficient to present a question of fact for the jury regarding Owens' ability and willingness to perform at the required time.

■ The apical question of whether the heretofore iterated conduct of the Bank amounted to a conversion of Owens' automobile is now reached. This court concludes that there was ample evidence to support the jury's verdict that it did. *Hornsby v. Knorpp*, 207 Mo.App. 302, 232 S.W. 776 (1921) dealt with substantially the same issue. The principal distinguishing feature between *Hornsby* and the instant case being that the former dealt with a pledge agreement as opposed to a security agreement. The corollary and pervasive relevancy of *Hornsby* merits quoting from it, l. c. 781–782, at some length:

"Appellants contend that they cannot be held guilty of a conversion of the collateral, as for a wrongful refusal to return it on demand, in the absence of a valid tender by plaintiffs of the amount due upon the original notes, and that there was no valid tender by plaintiffs for the reason that the so-called tender consisted of 'chips and whetstones,' included notes signed by Wm. J. Knorpp, in which the other defendants were in no way interested, and included the Crow note, which, it is said, had been paid. But whatever may be said of this tender we regard it as clear that the attitude assumed by the defendants, through their representative, Wm. J. Knorpp, was such as to make any further tender unnecessary. When plaintiffs undertook to make the aforesaid tender they were at once informed in substance, that defendants would not surrender the notes and collateral upon a payment of the original indebtedness, but would hold the collateral to satisfy unsecured claims of the defendants against the Munroe estate. The position thus taken by defendant was such as to render a proper tender, if made, a vain and idle ceremony, and hence dispensed with the necessity of making such tender. See *Hurt v. Cook*, 151 Mo. 416, 52 S.W. 396; *Westlake & Button v. City of St. Louis*, 77 Mo. 47, 46 Am.Rep. 4; *Deichmann et al. v. Deichmann*, 49 Mo. 107; 33 Cyc. 134. These defendants then placed themselves in the position of wrongfully withholding the collateral for an unlawful purpose, and we think that the trial court committed no error in holding that they were guilty of a conversion thereof."

See also: *Charles F. Curry and Company v. Hedrick*, 378 S.W.2d 522, 532 (Mo.1964) and *Diehr v. Thompson Chemicals Corp.*, 281 S.W.2d 572, 579 (Mo.App.1955).

■ Attention now focuses on the sufficiency of the evidence to support the jury's verdict that the Bureau converted certain items of personal property in which no security interest was claimed (Count II of Owens' petition). There is a paucity of evidence that any officer, employee or agent of the Bureau ever came into possession of any such items of personal property. Viewed from the standpoint most favorable to Owens, the record discloses nothing more than the fact that Owens testified that the items of personal property were in the trunk and interior of his automobile when he parked it on the public street prior to the time it was repossessed. There is not a scintilla of evidence that any agent or employee of the towing service engaged by the Bureau ever saw or was aware of the alleged presence of said items of personal property in the automobile, or that any officer or employee of the Bureau ever saw or was aware of the alleged presence of said items of personal property in the automobile. On the other hand, employees of the Bureau testified without contradiction that when Owens came to the Bureau's storage lot and requested return of all items of personal property in his automobile they gave him full access to the vehicle and all items of personal property therein at the time were removed by Owns. The items of personal property in issue were nowhere to be found. There is not a scintilla of evidence that any employee of the towing service or any officer or employee of the Bureau ever removed any items of personal property from the automobile.

■ Owens, at best, has only the inference that the items of personal property were in the automobile when it was repossessed to rely upon. Standing alone, as it does, it fails to constitute substantial evidence that the Bureau converted the items of personal property in question. As held in *Sparks v. Purdy et al.,* 11 Mo. 142, 145–146 (1847), "[t]he bare removing of one's chattel from one spot to another, without denying his ownership, but on the contrary acknowledging it, cannot be a conversion . . . [i]t is neither a deprivation of the owner's right, nor is it the use, enjoyment, change or destruction of the property." The same principle is reasserted in *Niemetz v. St. Louis Ag. & Mec. Ass'n,* 5 Mo.App. 59, 63 (1878), "The mere wrongful asportation of a chattel does not amount to a conversion, unless the taking or detention of the chattel is with intent to convert it to the taker's own use, or that of some other person; . . ." No later cases have been found which articulate so clearly this fundamental principle of the law of conversion. The inference that the items of personal property were in Owens' automobile when it was repossessed, which is all Owens has to rely upon, is too frail to support the verdict returned by the jury. A total evidentiary void exists with respect to proof that the Bureau ever denied Owens' ownership of the claimed items of personal property or that it took or detained any such items with intent to convert them to its own use; on the other hand, by way of the testimony of certain officers and employees of the Bureau, exactly the opposite is borne out by the evidence.

■ The Bank and Bureau contend that the judgment in favor of Owens upon both counts of his petition should be reversed outright because he was not "the real party in interest" within the meaning of Rule 52.01 and therefore had no right to prosecute the action. They postulate this contention on the fact that after suit was commenced, but before it was finally adjudicated, Owens filed a voluntary petition in bankruptcy. Relying upon 11 U.S.C.A., Section 110(a), they argue that Owens' cause of action for conversion under both counts of his petition was vested in the trustee in bankruptcy by operation of law. Owens' commencement of the conversion action prior to the time he voluntarily filed a petition for bankruptcy is a significantly controlling fact. The trustee in bankruptcy in the instant case never attempted to intervene, file a separate suit, or demand abatement of the action brought by Owens. In view of the overwhelming weight of authority at the federal level, infra, this court is constrained to hold that Owens was "the real party in interest" and had the

right to prosecute the action to a final judgment. There can be no question that he was the real party in interest when the action was commenced. 11 U.S.C.A., Section 29(c), which permits the trustee in bankruptcy, "with the approval of the court", to "prosecute as receiver or trustee any suit commenced by the bankrupt prior to the adjudication", has been construed to mean that although the trustee has a right to intervene in such a case and to be substituted for the plaintiff-bankrupt, the trustee is not obligated to intervene, and in the event he does not a suit or cause of action commenced by a plaintiff-debtor will not abate and prosecution of such action may be continued by the plaintiff-debtor. *Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *In re Prudence Co.*, 96 F.2d 157 (C.C.A. 2d Cir. 1938); and *D & D Co. v. Clapper*, 87 F.Supp. 365 (D.C.W.D.Mo. 1949). Since it is manifestly obvious that Owens was the real party in interest when the action was commenced, he remained the real party in interest since the trustee in bankruptcy made no effort to intervene.

Having ruled all points raised by the Bank and Bureau, with the end result that Owens was the real party in interest and made a submissible case against the Bank for conversion of his automobile but not as against the Bureau for conversion of certain items of personal property claimed to have been present in the automobile, it now becomes necessary to decide whether Owns was entitled to have the issue of punitive damages submitted to the jury with respect to conversion of his automobile by the Bank.

■ Proof of malice is a requisite for submission of punitive damages. However, it is not necessary that there be evidence that the wrongdoer was actuated by personal ill will or spite to support the submission of punitive damages; evidence of legal malice, the intentional doing of a wrongful act without just cause or excuse, is sufficient. *Pashalian v. Big-4 Chevrolet Company*, 348 S.W.2d 628 (Mo.App.1961) and *Davis v. Nash Central Motors*, 332 S.W.2d 475 (Mo.App.1960). The very nature of the evidence which this court heretofore concluded supported submission of the issue of conversion of Owens' Pontiac automobile by the Bank, likewise supported submission of the issue of punitive damages against the Bank with respect to conversion of said automobile. To hold otherwise would be legally inconsistent and patently contradictory.

■ Count I (conversion of the automobile) was pleaded and submitted to the jury solely against the Bank. Owens seeks remand of the case for trial solely on the issue of punitive damages against the Bank. The propriety of remanding the case for trial limited to the issue of punitive damages has not been briefed by either party. Nevertheless, it poses a serious question from the standpoint of appellate disposition which cannot be avoided. As stated in 85 A.L. R.2d 9, 26, "[t]he prime requisites for the limitation of a new trial in a tort action to the issue of damages . . . are (1) that the issue of damages be entirely separate and distinct from the issue of liability . . (2) that the liability of the defendant be definitely established . . . (3) that such limitation will not operate to the prejudice of the defendant . . . [and] furthermore, that the power to limit the new trial to the issue of damages must be exercised with caution, and it has been held that any doubt as to the propriety of such limitations must be resolved against it."

The Supreme Court of this state on two occasions has emphasized the controlling significance of requisite (1), supra, where both compensatory and punitive damages were sought. *Ackmann v. Kenney-Toelle Real Estate Company*, 401 S.W.2d 483 (Mo. banc 1966), was an action by homeowners against a real estate company and contractor for damages for fraudulent misrepresentations in the sale of a home. Both compensatory and punitive damages were prayed for. Defendants appealed from a judgment awarding plaintiffs both compensatory and punitive damages. The court of appeals remanded the case for a new trial on the issue of damages only. The case was transferred to the Supreme Court on application of the defendants. The Supreme

Court remanded the case for trial on all the issues and, in doing so, held, l. c. 490: ". . . the amount of punitive damages depends on consideration of the merits of the case . . . [w]e do not see how the jury could properly determine the amount of punitive damages without hearing the evidence on all issues." *Panjwani v. Star Service & Petroleum Company*, 395 S.W.2d 129 (Mo.1965), was an action for assault and battery wherein the plaintiff sought compensatory and punitive damages. All the parties filed motions for a new trial and the trial court granted plaintiff a new trial "on the sole issue of damages". The Supreme Court reversed and remanded the case for a new trial on all the issues. In doing so, it stated, l. c. 133: ". . . it would appear to be impossible for the jury to adequately appraise the claim of damages, especially punitive damages, without full proof of all facts necessary to establish liability for the basic tort in the first instance." In the instant case, proof of malice, a requisite for the submission of punitive damages, is inextricably tied up with proof of the conversion of Owens' automobile because both, for the most part, necessarily entail consideration of the same evidence. In view of Owens' prayer to have the case remanded for trial on the issue of punitive damages this court is constrained to hold that *Ackmann* and *Panjwani* dictate that the case should be remanded for trial on all the issues since it would be impossible for a new and different jury to adequately appraise his claim for punitive damages without fully hearing all the facts necessary to prove conversion of his automobile by the Bank.

The trial court entered judgment on the verdict returned by the jury upon Count I (conversion of the automobile) in favor of Owens and against both the Bank and the Bureau, although, as previously noted, Count I was pleaded and submitted to the jury solely against the Bank. The judgment below in favor of Owens upon Count I of his petition for compensatory damages only is reversed as to both the Bank and the Bureau, and the cause is remanded for trial upon Count I (conversion of the automobile) against the Bank alone on all issues; the judgment below in favor of Owens and against the Bank and Bureau upon Count II (conversion of certain items of personal property, also erroneously entered against both, although pleaded and submitted to the jury solely against the Bureau) is reversed.

All concur.